UNITED STATES of America, Plaintiff-Appellee,

v.

Evelio PINTO, Defendant-Appellant.

No. 88-2896.

United States Court of Appeals, Seventh Circuit.

Submitted April 17, 1989.

Decided May 19, 1989.

Harold Stein, Bahcall Stein & Sullivan, Milwaukee, Wis., for defendant-appellant.

R. Jeffrey Wagner, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and WILL, Senior District Judge.*

EASTERBROOK, Circuit Judge.

The Sentencing Guidelines apply to this case, in which Evelio Pinto was convicted of possessing cocaine with intent to distribute it, and of conspiring to do so. Because Pinto has other felony convictions on his record, the district judge treated him as a "career offender" under Guideline § 4B1.1, yielding a sentence of 264 months in prison, without possibility of parole (abolished for all sentences under the Guidelines). This sentence, 22 years in custody, is much greater than the 12 years the district judge established as an alternative sentence under prior law (in the event the Guidelines should be held invalid), and much greater than the sentence Pinto would have received under the Guidelines without treatment as a career offender. Pinto contests the application of § 4B1.1 and of the Guidelines themselves.

The "career offender" guideline applies when a defendant convicted of a drug offense or violent felony has two or more prior convictions for drug trafficking or "crimes of violence" as an adult. Section 4B1.2 adopts the definition of "crime of violence" in 18 U.S.C. § 16:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The Sentencing Commission's Application Notes to this Guideline say: "Conviction for burglary of a dwelling would be covered [as a crime of violence]; conviction for burglary of other structures would not be covered." The district judge relied on this note in concluding that the residential burglaries on Pinto's record are "crimes of violence".

* Honorable Hubert L. Will, of the Northern District of Illinois, sitting by designation.

■ Pinto insists that resort to the notes is illegitimate, that only the text of the Guideline counts. The statute authorizing the guideline system says the opposite: "The court shall ... consider any pertinent policy statement issued by the Sentencing Commission ... that is in effect on the date the defendant is sentenced". 18 U.S.C. § 3553(a)(5). Courts customarily consider legislative history in interpreting statutes; on what ground would the Commission's notes, a form of "administrative history", be off limits? Conscious of the limits of legislative history, we exercise caution in leaning on what may not be an authentic guide to meaning. E.g., *Trustees of Iron Workers Pension Trust v. Allied Products Corp.*, 872 F.2d 208, 213 (7th Cir.1989), *In re Sinclair*, 870 F.2d 1340 (7th Cir.1989). The Commission's notes are largely written by the Commissioners and always are considered together with the text; we need not wonder whether the Commissioners knew of and assented to these notes in the same way we worry about statements buried in committee reports. Like legislative history, the notes are not formally binding, and we would follow the text over the notes in the event of conflict, but there is none in this case. The notes simply state the obvious: residential burglary has been considered a violent offense for hundreds of years. Courts of appeals disagree about whether *non*-residential burglary is a violent crime for purposes of the minimum-sentence rule in 18 U.S.C. § 924(e). Compare *United States v. Chatman*, 869 F.2d 525 (9th Cir.1989), and *United States v. Headspeth*, 852 F.2d 753 (4th Cir.1988), following the common law rule under which only residential burglaries were deemed violent, with *United States v. Leonard*, 868 F.2d 1393 (5th Cir.1989), *United States v. Hill*, 863 F.2d 1575 (11th Cir.1989), and Judge O'Scannlain's dissenting opinion in *Chatman*, treating all burglaries as violent crimes. Another panel of this court has that question under advisement in *United States v. Dombrowski*, No. 88–2545 (argued Feb. 24, 1989), and we express no opinion on it. No one has doubted for decades that *residential* burglary is a "violent" offense, because of the potential for mayhem if burglar encounters resident. Pinto's burglaries were residential, so § 4B1.1 applies.

■ Pinto is left with a constitutional challenge to the Guidelines, but *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), wiped out most of his arguments. The only survivor is the claim that the Guidelines violate the Due Process Clause of the fifth amendment because they deprive judges of the power to impose "individualized" sentences. Several district judges have taken this position. E.g., *United States v. Alafriz*, 690 F.Supp. 1303, 1306–11 (S.D.N.Y.1988); *United States v. Ortega Lopez*, 684 F.Supp. 1506, 1512–14 (C.D.Cal.1988) (en banc). Three courts of appeals have rejected the contention, *United States v. Brittman*, 872 F.2d 827 (8th Cir.1989); *United States v. Vizcaino*, 870 F.2d 52 (2d Cir.1989); *United States v. Frank*, 864 F.2d 992, 1010 (3d Cir. 1988), as did Judge Wiggins, dissenting from a decision invalidating the Guidelines on other grounds. *Gubiensio–Ortiz v. Kanahele*, 857 F.2d 1245, 1269 (9th Cir.1988) (Wiggins, J., dissenting), vacated, —— U.S. ——, 109 S.Ct. 859, 102 L.Ed.2d 984 (1989). Like our fellow courts of appeals, we conclude that the Guidelines meet constitutional requirements.

The Guidelines do not eliminate "individualized" sentences. Offense and offender characteristics still count—often a great deal. Pinto is an example, for he will serve much more time than would a first offender. Dealers who sell large quantities get longer terms than those who sell small quantities, and so on. Guidelines § 2D1.1. True, the Guidelines *standardize* the process of sentencing, in the sense that every judge must use the same offense and offender characteristics. Standardization implies eliminating considerations that some judges think important in sentencing but that others, like the Commission, think less so or deem irrelevant. To reduce disparity in sentencing *means* telling some judges not to take into account things they would prefer to consider, or to weigh things differently than they think best. Some "mechanical" quality is inevitable, for *rules* (as

opposed to flexible standards) have mechanical aspects and will encounter cases that just do not fit. If each judge used his favorite factors in every case, however, there would be no common ground. Still, that each judge must do things the same way unless there is ground for departure, which is allowed under defined circumstances, 18 U.S.C. § 3553(b), hardly eliminates individuation in sentencing: the complexity of the Guidelines testifies to the effort to take many crime- and offender-specific features into account.

If the Guidelines used a cookie cutter rather than the complex of factors they do, what of it? Criminals aren't entitled to sentences devised by judges rather than legislatures. *United States v. Oxford*, 735 F.2d 276, 278 (7th Cir.1984) ("there is no constitutional requirement that a sentencing court individualize the sentence"); *United States v. McCoy*, 770 F.2d 647, 649–50 (7th Cir.1985) (same). Judicial discretion in sentencing comes late to our history. From the beginning of the Nation, Congress specified precise sentences. See *United States v. Grayson*, 438 U.S. 41, 45–46, 98 S.Ct. 2610, 2613–14, 57 L.Ed.2d 582 (1978), and *Ex parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916), recounting this history. Blackstone extolled uniformity as "one of the glories of our English law" because punishment "is not left in the breast of any judge" but is meted out "without respect of persons. For, if judgments were to be the private opinions of the judge, men would then be slaves to their magistrates; and would live in society, without knowing exactly the conditions and obligations which it lays them under." William Blackstone, 4 *Commentaries on the Laws of England* 371 (1st ed. 1769). These things go in cycles. Fixed sentences came to be seen as arbitrary, so legislatures enlarged judges' discretion to take the circumstances of each case into account, although one statute fixing the sentence—25 years, neither more nor less, for armed robbery from a postal carrier—survived until eliminated when the Guidelines went into effect. 18 U.S.C. § 2114, sustained against due process challenge in, e.g., *United States v.*

*Smith*, 602 F.2d 834 (8th Cir.1979), and *Smith v. United States*, 284 F.2d 789, 791 (5th Cir.1960). In some states (and for the Youth Corrections Act in the federal system) this reaction reached the extreme of indeterminate sentencing: all a judge could do was to pronounce guilt, and executive officials would decide how long the defendant served based on their assessment of the offender's "rehabilitation". Discretion, all the rage for years, in turn fell under attack on Blackstone's grounds, for it allowed unequal treatment of comparably-situated persons, according to each judge's estimate of the gravity of the crime and the culpability of the criminal. So the pendulum swung in the other direction. The statute books started to fill with mandatory minimum sentences. Criminal statutes with rare exceptions also set maximum sentences, which confine judges' powers as fully as do minimums—though defendants never challenge upper limits.

Congress repudiated "rehabilitation" as a theory of punishment, 18 U.S.C. § 3582(a), 28 U.S.C. § 994(t), implying a dramatic reduction in individuation of sentence. Combining minimum and maximum terms, the Guidelines represent a point on a curve between fixed sentences and indeterminate ones. They use familiar devices—with the additional flexibility of "departures" that would not be authorized by statutory minima and maxima. Before the Guidelines took effect, judges' discretion also was hedged about by the practices of the parole authorities, who sought to leaven the disparities in sentencing with release guidelines similar in design to the Sentencing Guidelines. *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), rebuffed arguments that these trench on powers the Constitution reserves to the courts or authorize the revision of sentences to control more precisely the actual time served. See also, e.g., *Geraghty v. United States Parole Commission*, 719 F.2d 1199, 1208 (3d Cir.1983); *United States ex rel. Forman v. McCall*, 776 F.2d 1156 (3d Cir.1985).

Setting the bounds within which sentences must fall is a legislative function.

Recently these bounds were wide (0–5 years for ordinary felonies, 10–40 for extraordinary ones); the Guidelines shrink the ranges so that the top is within 25% of the bottom and specify more precisely what combinations of offense and offender characteristics yield what ranges. One may agree or disagree with the project in principle; one may praise or question its implementation in the current Guidelines; but there can be no doubt that Congress may set formal minimum and maximum terms if it chooses. Questions about the delegation of power to set these bounds having been resolved in *Mistretta*, the existence of the ranges poses no separate problem.

AFFIRMED.