**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Harold A. EBBOLE,
Defendant–Appellant.**

No. 89–3672.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1990.

Decided Nov. 8, 1990.

Rehearing and Rehearing En Banc
Denied Dec. 10, 1990.

.

Rehearing and Rehearing En Banc
Denied Dec. 18, 1990.

Jeffrey Anderson, Richard F. Raemisch, Asst. U.S. Attys., Madison, Wis., for plaintiff-appellee.

Howard Goldman, Tomlinson & Gillman, Madison, Wis., for defendant-appellant.

Before WOOD, Jr., POSNER, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Harold Ebbole was sentenced to seven years and eight months in federal prison after pleading guilty to distributing a gram of cocaine to an undercover police officer. Ebbole's stiff—some, including the trial judge, would say draconian—sentence resulted from application of § 1B1.3(a)(2) of the Sentencing Guidelines, which requires courts to increase a defendant's base offense level if it finds that during the "same course of conduct" the defendant possessed additional quantities of the drug, regardless of whether the defendant was convicted of offenses relating to those drugs. *United States v. White*, 888 F.2d 490, 497 (7th Cir.1989). Ebbole's presentence report cited evidence that Ebbole purchased 1.7 kilograms of cocaine within a 3 month period encompassing the sale to the undercover agent. The Probation Office used this quantity to calculate Ebbole's base offense level, with significant effect. Had the report considered only the drugs Ebbole pleaded guilty to distributing, his base offense level would have been 14 and

the sentencing range 27–33 months.[1] The additional quantities increased the recommended base offense level to 26, increasing the sentencing range more than three-fold, to 92–115 months. Ebbole objected to the presentence report. The trial judge conducted an evidentiary hearing and determined, by a preponderance of the evidence, that Ebbole had possessed 1.2 kilograms of cocaine as part of the same course of conduct for which he pleaded guilty.[2] The court agreed that under § 1B1.3, Ebbole's base offense level should be increased from 14 to 26. Ebbole contends that application of § 1B1.3 denied him due process of law.[3]

We have observed that the unfairness of sentencing on the basis of offenses for which a defendant has not been charged or convicted is "self-evident." *United States v. Johnson*, 658 F.2d 1176, 1179 (7th Cir. 1981). The Supreme Court, however, has long held that this practice does not violate due process. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (upholding sentence based in part on evidence, not introduced at trial, that defendant committed some thirty burglaries for which he had not been tried or convicted); *United States v. Grayson*, 438 U.S. 41, 49, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978) (reaffirming *Williams*). Ebbole does not, however, contest the trial court's *discretion* to increase a sentence on the basis of evidence of related, but uncharged, drug activity. Citing *United States v. Davis*, 715 F.Supp. 1473 (C.D.Cal.1989), Ebbole maintains that the Guidelines deprive

him of due process because they *require* judges to impose a fixed penalty on such activity. Ebbole argues that due process requires that judges have the discretion to discount penalties imposed for uncharged conduct because the prosecution need establish such acts by only a preponderance of the evidence presented for sentencing purposes. *See McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986) (preponderance standard for sentencing satisfies due process); *White,* 888 F.2d at 499 ("The Guidelines' standard for resolving disputes is a preponderance of the evidence, not reasonable doubt."); *see also* U.S.S.G. § 6A1.3 (court may consider all relevant information that has "sufficient indicia of reliability to support its probable accuracy"). The Guidelines violate due process, he maintains, because they *deny* judges the discretion to assign weight to evidence of uncharged misconduct based on the degree of proof by which the misconduct was established.

We adverted to this argument in *White,* where we considered the proper interpretation of § 1B1.3. We held there that "when the Guidelines provide tables that cumulate the amount sold or stolen, any acts that 'were part of the same course of conduct or common scheme or plan as the offense of conviction' should be included in the computation of the amount on which the offense level depends, whether or not the defendant was convicted of selling or stealing these additional amounts." *Id.* at 497.[4]

---

**1.** Ebbole's Criminal History Category was IV.

**2.** The court found that the presentence report counted approximately 500 grams of cocaine twice. The trial judge therefore reduced the quantity considered to 1.2 kilograms. This reduction did not decrease the Guidelines base offense level, however.

**3.** Ebbole also challenged the sufficiency of the evidence relating to the court's finding that his possession of drugs on other occasions in January and February 1989 was part of the same course of conduct. We find the temporal proximity of this conduct to the offense for which Ebbole was convicted and the identity of locale and supporting characters convincing; this claim is without significant merit and need not be discussed in greater detail.

**4.** The circuits have unanimously agreed on this interpretation of § 1B1.3. A few circuits have also discussed the constitutionality of § 1B1.3, but have focused only on the validity of the preponderance standard. *See, e.g., United States v. Wright,* 873 F.2d 437, 441 (1st Cir. 1989); *United States v. Guerra,* 888 F.2d 247, 249–51 (2d Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1833, 108 L.Ed.2d 961 (1990); *United States v. Taplette,* 872 F.2d 101, 103 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989); *United States v. Gooden,* 892 F.2d 725, 727–28 (8th Cir.1989), *cert. denied sub nom. Keener v. United States,* — U.S. —, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990); *United States v. Castellanos,* 904 F.2d 1490, 1494–96 (11th Cir.1990). Only two other Circuits appear to have squarely addressed the claim that § 1B1.3 violates due process by restricting judicial discretion to discount the weight accorded

1497

Neither of the defendants in *White* raised a constitutional challenge to operation of this provision of the Guidelines, but we noted that had the prosecution failed to establish the additional quantities beyond reasonable doubt, "we would have a difficult case. Differences in the burden of persuasion might allow a court to include drugs in a sentencing computation if persuaded that the prosecutor established the defendant's connection to them by a preponderance of the evidence even though not beyond a reasonable doubt." *Id.* at 499.[5]

Although we raised the question in *White*, we failed to acknowledge that *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), resolves the issue. In *McMillan*, the Supreme Court upheld a Pennsylvania statute providing a five-year mandatory minimum sentence for certain felonies committed with a weapon. The defendant asserted that the statute violated due process by requiring punishment for conduct proved only by a preponderance of the evidence, rather than beyond a reasonable doubt. Rejecting that argument, the Court stated that it had "difficulty fathoming why the due process calculus would change simply because the legislature has seen fit to provide sentencing courts with additional guidance." *Id.* at 92, 106 S.Ct. at 2419. The district court in *Davis* sought to distinguish the statute at issue in *McMillan* because "the firearm determination is never specifically segregated from other elements of sentencing discretion for purposes of establishing a fixed or 'add-on' sentence." 715 F.Supp. at 1478 n. 19. It is clear, however, that the *McMillan* court viewed the Pennsylvania statute as imposing a fixed penalty incurred specifically for possessing a firearm during commission of the enumerated felonies. The Court explained that Pennsylvania "simply took one factor that has always been considered by sentencing courts to bear on punishment—the instru-

mentality used in committing a violent felony—and dictated *the precise weight to be given that factor....*" *Id.* 477 U.S. at 89–90, 106 S.Ct. at 2417–18 (emphasis added). In *United States v. Ross*, 905 F.2d 1050, 1053–54 (7th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 172, 112 L.Ed.2d 136 (1990), we therefore held that *McMillan* forecloses the claim that depriving judges of discretion to assign weight to sentencing factors according to the strength of the proof of those factors violates due process.

In *United States v. Pinto*, 875 F.2d 143 (7th Cir.1989), we also rejected a challenge to the guidelines on the ground that they strip judges of sentencing discretion, albeit in a slightly different fashion. Pinto challenged the Guidelines on the ground that they deprived judges of the discretion to impose individualized sentences; his challenge focused on the lack of judicial discretion to determine which sentencing factors to consider in a single case, rather than on the lack of discretion to accord weight to a factor in proportion to the quality of the evidence supporting it, as Ebbole contends. This is a distinction without a difference, however—at least without a difference that implicates the Constitution. If—as *Pinto* held—Congress may "*standardize* the process of sentencing, in the sense that every judge must use the same offense and offender characteristics," *id.* at 144, and if—as *Williams* held—defendants *may* be sentenced on the basis of crimes for which they have not been convicted, it follows that Congress may impose a uniform penalty when there is some threshold of evidence that a defendant committed other crimes. Otherwise, judges could simply disregard factors they believed to be irrelevant by assigning them zero weight. "To reduce disparity in sentencing *means* telling some judges not to take into account things they would prefer to consider, or to weigh things differently than they think best." *Pinto*, 875 F.2d at 144 (emphasis in

to facts established at a sentencing hearing by merely a preponderance of the evidence. *See United States v. Restrepo*, 903 F.2d 648, 654 (9th Cir.), *reh'g granted,* 912 F.2d 1568 (1990); *United States v. Frederick,* 897 F.2d 490, 492–93 (10th Cir.1990). Both rejected the claim.

5. In actuality, the difficulty arises only if the Guidelines *require* a court to assign a *fixed* penalty on the basis of additional drugs; *Williams* disposes of the argument that the judge cannot consider such evidence *if he wishes to do so.*

original); *cf. United States v. Mistretta,* 488 U.S. 361, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989) ("Congress, of course, has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control.") (citations omitted).

But aren't facts that increase the Guideline range applicable to a defendant the functional equivalents of statutory elements of the offense, which, *see In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), must be proved beyond a reasonable doubt? After all, "[a] state may define crime directly (through substantive elements of the offense) or indirectly (through criteria labeled 'sentencing' standards but substantive in operation)." *Jones v. Thieret,* 846 F.2d 457, 462 (7th Cir.1988). Congress established the Sentencing Commission in order to, *inter alia,* "avoid[ ] unwarranted sentencing disparities among defendants with similar records *who have been found guilty of similar criminal conduct....*" 28 U.S.C. § 991(b)(1)(B) (emphasis added). Toward this end, Congress authorized the Commission, "for each category of offense involving each category of defendant, [to] establish a sentencing range that is consistent with all pertinent provisions of title 18, United States Code." 28 U.S.C. § 994(b)(1). Congress, so the argument goes, therefore acknowledged the reality that defendants convicted of the same statutory offense have not necessarily committed "similar criminal conduct," and by authorizing the Commission to develop discrete sentencing ranges, effectively delegated to the Commission the power to adapt the federal criminal code to reflect this reality. The sentencing ranges differentiate between degrees of criminality both between *and within* statutes; haven't, then, defendants sentenced to different ranges within the Guidelines after conviction for the same offense committed materially different offenses?

There is authority for the proposition that when legislatures identify facts that materially increase criminal culpability, those facts must be proved beyond a rea-sonable doubt. In *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the Court invalidated a defendant's sentence that had been founded, in large part, upon two prior convictions in cases where the defendant was not represented by counsel. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), rendered such convictions unconstitutional, *see Pickelsimer v. Wainwright,* 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963), and in *Tucker* the Court emphasized that "[t]o permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt *or enhance punishment for another offense* ... is to erode the principle of that case." 404 U.S. at 449, 92 S.Ct. at 593 (quoting *Burgett v. Texas,* 389 U.S. 109, 114, 88 S.Ct. 258, 261, 19 L.Ed.2d 319 (1967)) (emphasis added). *Tucker* stands for the proposition that defendants may not be sentenced on the basis of criminal conduct if the proof of that conduct is constitutionally infirm. By *Tucker*'s rationale, in order to factor into a sentence criminal conduct other than that for which a defendant has been charged, the government must comply with *all* constitutional prerequisites to establishing criminal conduct, including *Winship*'s requirement that the state prove the conduct beyond a reasonable doubt.

The Court's decision in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), supports this view. In *Mullaney,* the Court held unconstitutional a state law that placed the burden on the defendant to prove that "heat of passion" drove him to kill in order to be sentenced for manslaughter rather than for murder, noting that:

the criminal law ... is concerned not only with guilt or innocence in the abstract but also with the degree of criminal culpability. Maine has chosen to distinguish those who kill in the heat of passion from those who kill in the absence of this factor. Because the former are less 'blameworth[y],' they are subject to substantially less severe penalties. *By drawing this distinction, while re-*

*fusing to require the prosecution to establish beyond a reasonable doubt the fact upon which it turns, Maine denigrates the interests found critical in Winship.*

*Id.* at 697–98, 95 S.Ct. at 1888–89 (emphasis added). *Mullaney* clearly advanced the proposition that facts upon which criminal culpability—as evidenced by the degree of punishment received—turns must be proved beyond a reasonable doubt.

The Court, however, quickly abandoned that position in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). Disclaiming *Mullaney*'s language as dicta, the *Patterson* court expressly disavowed the notion that the prosecution must "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment." 432 U.S. at 207, 97 S.Ct. at 2325; *see also id.* at 214–15, 97 S.Ct. at 2329–30. Later, in *McMillan*, the Court distinguished *Mullaney*, explaining that the state's burden shifting in that case exposed defendants to "a differential in sentencing ranging from a nominal fine to a mandatory life sentence." *McMillan*, 477 U.S. at 87, 106 S.Ct. at 2417 (quoting *Mullaney*, 421 U.S. at 700, 95 S.Ct. at 1890), whereas the lesser burden of proof permitted by the Pennsylvania weapon provision imposed only a mandatory minimum sentence within the statutorily prescribed range of permissible sentences. *Id.* 477 U.S. at 87–88, 106 S.Ct. at 2416–17. Since the Pennsylvania statute "operate[d] solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it," the Court concluded that its operation did not deny due process to defendants sentenced under it. Adhering to *McMillan*, we have previously rejected the view that the Guidelines violate due process by making quantity a *de facto* element of drug offenses. *See United States v. Reynolds*, 900 F.2d 1000, 1002–04 (7th Cir.1990).

The district court in *Davis* maintained that, "by distinguishing without overruling *Mullaney* and *Winship*, and acknowl-

edging that there is no 'bright' line between those two cases and it, *McMillan* lends support to the proposition that in the extreme case, when application of sentencing factors may overwhelm the sentence that would otherwise be imposed on the basis of proven elements, the statute cannot be constitutional." 715 F.Supp. at 1478. But the sentencing range faced by the defendant in *Mullaney* was also "within the statutorily prescribed range of permissible sentences," so *McMillan*'s determination to distinguish away *Mullaney* teaches more than does its proffered rationale.

■ We read *McMillan* differently. After *McMillan*, the relevant constitutional inquiry is not whether the degree of punishment is tied to a specific factor; rather, the issue turns on whether the government may properly criminalize conduct without including a particular factor as an element of the crime. *See Martin v. Ohio*, 480 U.S. 228, 233, 107 S.Ct. 1098, 1101, 94 L.Ed.2d 267 (1987) ("The State did not exceed its authority in defining the crime of murder as purposely causing the death of another with prior calculation or design [without reference to whether the killing was done in self-defense]."). The Court has declined to use the due process clause to substantively shape criminal laws, opting instead to defer to legislative definitions of crime. Since *Mullaney*, the court has consistently maintained that "the state legislature's definition of the elements of the offense is usually dispositive: '[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements *included in the definition of the offense* of which the defendant is charged.'" *McMillan*, 477 U.S. at 85, 106 S.Ct. at 2415 (1986) (quoting *Patterson*, 432 U.S. at 210, 97 S.Ct. at 2327 (emphasis added in *McMillan* )). Although *McMillan* acknowledged that "there are constitutional limits to the State's power" to define the elements of a crime, it also observed that allocations of burdens of proof are "not subject to proscription under the Due Process Clause unless [they] offend[ ] some principle of justice so rooted in the tradi-

tions and conscience of our people as to be ranked as fundamental." 477 U.S. at 85, 106 S.Ct. at 2416 (quoting *Patterson*, 432 U.S. at 211 n. 12, 97 S.Ct. at 2327 n. 12). *Mullaney*, then, can no longer be read to require *all* facts critical to culpability to be proved beyond a reasonable doubt; the Maine law at issue in that case represents only an extreme example of legislative redefinition of criminal conduct that runs afoul of the due process clause. *See McMillan*, 477 U.S. at 86, 106 S.Ct. at 2416; *Mullaney*, 421 U.S. at 706, 95 S.Ct. at 1893 (Rehnquist, J., concurring) (no inconsistency between requiring state to prove formal elements of a crime beyond a reasonable doubt and permitting lesser, or shifted, burden with respect to other factors relevant to culpability). The due process clause, according to the Supreme Court, acts only to insure that legislative decisions to *criminalize* conduct do not offend deeply held values; it does not protect against legislative decisions to *punish* conduct, even when they offend the same values.

History mitigates (somewhat) the arbitrary nature of this distinction. The Court observed in *Williams*, that "both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be impose within limits fixed by law." 337 U.S. at 246, 69 S.Ct. at 1082. We also noted, in *White* and *Pinto*, that judges have long had license to base sentences on conduct for which defendants have not been convicted. In light of this historical practice, we cannot say that *requiring* courts to consider facts not proved beyond a reasonable doubt, and assigning *fixed* weights to them, is at odds with "the traditions and conscience of our people," even though "in-

nocent until proven guilty" ranks among our most fundamental values.

■ If the federal government (as well as the states) may constitutionally criminalize drug trafficking without regard to the quantity of drugs involved, and if the government may also constitutionally prescribe "wide limits for maximum and minimum sentences," *Williams*, 337 U.S. at 251, 69 S.Ct. at 1085, [6] we cannot agree with the *Davis* court that § 1B1.3 is unconstitutional merely because it produces a sentence that turns largely, or even exclusively, on a single factor. Before the Guidelines, the judge could have sentenced Ebbole to the same, or longer, sentence, without regard to whether she believed he had been involved in other drug activity. Similarly, Congress could have constitutionally prescribed even higher mandatory sentences for possession of any amount of drugs, making quantity completely irrelevant to the sentencing calculus. Instead, Congress (through the Sentencing Commission) adopted a *less* draconian approach by making quantity a factor relevant to sentencing and mandating the weight to be accorded to additional quantities not proved beyond reasonable doubt. Ebbole's sentence is harsh, but not impermissibly so.[7]

For similar reasons, we cannot say that when a court sentences a defendant under the Guidelines on the basis of criminal activity for which he was not convicted, it imposes a penalty outside "the range already available to it." *McMillan*, 477 U.S. at 88, 106 S.Ct. at 2417. The Guideline ranges must comply with the provisions of existing federal criminal law, *see* 28 U.S.C. § 994(a); none of the ranges may exceed the statutory sentencing ranges provided for the offense of conviction. Moreover, the Guideline ranges cannot be viewed in isolation from the provisions—like § 1B1.3—that control their application. Section 1B1.3 expressly permits courts to sentence defendants to a higher range on

---

**6.** *See also Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948) ("The sentence being within the limits set by the statute, its severity would not be grounds for relief....").

**7.** Ebbole does not raise an eighth amendment claim, and it seems unlikely that a seven year sentence for selling an ounce of cocaine could be found to constitute cruel and unusual punishment.

the basis of criminal activity for which the defendant has not been convicted; applying the section to a defendant, then, does expose the defendant to a higher range, but that range is one expressly contemplated by law.

It has been argued also that the Sentencing Commission exceeded its statutory authority by adopting § 1B1.3. *See United States v. Miller,* 910 F.2d 1321, 1329–30 (6th Cir.1990) (Merritt, C.J., dissenting). Chief Judge Merritt suggests that Congress circumscribed the Commission's power to impose "incremental" penalties to defendants who are *"convicted* of multiple offenses committed in the same course of conduct." 28 U.S.C. § 994(*l* ) (emphasis added).[8] In like vein, one can argue that Congress restricted the Commission's power to punish different degrees of criminality by limiting application of the same sentencing range to defendants *"who have been found guilty* of similar criminal conduct." 28 U.S.C. § 991(b)(1)(B) (emphasis added).[9] While these arguments represent a possible reading of the enabling legislation, we do not believe that the statutes may fairly be read to preclude the Commission from adopting § 1B1.3. The two provisions at issue are not, as Chief Judge Merritt's view implies, cast in restrictive or exclusive terms. Section 994(*l* ) does not *restrict* the Commission's power to impose incremental penalties for uncharged conduct; it merely directs the Commission to insure that the Guidelines provide additional penalties when defendants are convicted of multiple offenses. Section 991(b) calls

only for the elimination of *unwarranted* disparities between defendants convicted of similar criminal conduct. Since quantity is not an element of the crimes—like possession with intent to distribute—to which § 1B1.3 applies, all defendants convicted of that crime have, by definition, been convicted of "similar criminal conduct." Section 1B1.3 acts to increase the severity of the sentence in proportion to the quantity involved in the offense; discrimination between defendants on the basis of the quantity of their illegal trafficking does not create an "unwarranted" disparity between the sentences awarded convicted drug offenders.

We must conclude, therefore, that application of § 1B1.3 did not deny defendant Ebbole due process of law. Nevertheless, we feel compelled to observe that this provision of the Guidelines "obviously invite[s] the prosecutor to indict for less serious offenses which are easy to prove and then expand them in the probation office." *Miller,* 910 F.2d at 1332 (Merritt, C.J., dissenting). In Ebbole's case, the United States Attorney's office appears to have accepted this dubious invitation. Since *McMillan* precludes us from invoking the Constitution to condemn this practice, we can only seek (*again—see United States v. Fischer,* 905 F.2d 140, 141–42 (7th Cir.1990) (*per curiam* )) to impress upon prosecutors that such tactics will inevitably prove counterproductive, reducing incentives for defendants to cooperate with the government, and ultimately impairing, rather than im-

---

**8.** 18 U.S.C. § 994(*l* ) provides, in pertinent part, that:

> The Commission shall insure that the guidelines promulgated pursuant to subsection (a)(1) reflect—
> (1) the appropriateness of imposing an incremental penalty for each offense in a case in which a defendant is convicted of—
> (A) multiple offenses committed in the same course of conduct that result in the exercise of ancillary jurisdiction over one or more of the offenses; and
> (B) multiple offenses committed at different times, including those cases in which the subsequent offense is a violation of section 3146 (penalty for failure to appear) or is committed while the person is released pursuant to the provision of section 3147 (penalty for

an offense committed while on release) of title 18....

**9.** Section 991(b) provides, in pertinent part, that:

> The purposes of the United States Sentencing Commission are to—
>
> . . . . .
>
> (B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices....

proving, the efficiency of the federal criminal justice system.

AFFIRMED.