**UNITED STATES of America, Appellant,**

v.

**Eddie Lee GALLOWAY, Appellee.**

**No. 90–3034.**

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1991.

Decided Sept. 9, 1991.

Rehearing and Rehearing En Banc Granted; Opinion and Judgment Vacated Nov. 20, 1991.

Robert L. Neighbors, Little Rock, Ark., for appellant.

Richard E. Holiman, Little Rock, Ark., for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge and BEAM, Circuit Judge.

BRIGHT, Senior Circuit Judge.

The Government appeals Eddie Lee Galloway's twenty-four month sentence based on a single count of theft from an interstate shipment. 18 U.S.C. § 659 (1988). The Government sought to include seven uncharged thefts in the sentencing calculation pursuant to section 1B1.3(a)(2) of the Sentencing Guidelines. United States Sentencing Commission, *Guidelines Manual*, § 1B1.3(a)(2) (Nov. 1990) [hereinafter U.S.S.G.]. The district court refused to include this separate uncharged conduct, holding that section 1B1.3(a)(2) violated Galloway's right to indictment, jury trial, confrontation of witnesses and proof of guilt beyond a reasonable doubt. We affirm Galloway's sentence, but do not reach the constitutional issues upon which the district court rested its decision.

## I. BACKGROUND

In a two-count indictment, the Government charged Galloway and one W.J. Young with stealing a truckload of tires and transporting a stolen vehicle in interstate commerce. In August 1990, Galloway pled guilty to count one, theft from interstate shipment; count two was dismissed pursuant to a plea agreement.

The presentence report PSR (PSR) valued the stolen goods at $37,000. ¶¶ 20–21. Under the Guidelines, this amount ordinarily would have called for a base offense level of 10 and a sentencing range of twenty-one to twenty-seven months for Galloway, based on Criminal History Category V. U.S.S.G. § 2B1.1; U.S.S.G. Ch. 5, Pt. A. The PSR, however, alleged that "Galloway participated in an organization which stole approximately $1,009,950 in stolen goods which were moving in interstate commerce." PSR ¶ 11. It listed seven separate interstate property offenses for which the Government had neither charged nor indicted Galloway and included these offenses in the sentencing calculation. PSR ¶¶ 13–19. The PSR also recommended related enhancements for Galloway's alleged leadership role in offenses that required more than minimal planning. The above adjustments nearly tripled Galloway's sentencing range. They put Galloway at offense level 19 and called for a sentence of sixty-three to seventy-eight months.[1,2]

By contrast, for Young a very different result ensued. Young pled guilty under an identical plea agreement to Galloway's, and his PSR listed the same uncharged interstate property offenses. However, Young's PSR concluded that the theft of the trailer and tires "was the only transaction of which Mr. Young ... had knowledge." See PSR ¶ 21. As a consequence, the PSR calculated Young's sentencing range based only on the offense charged in the indictment. Additionally, Young's PSR

recommended a two-point reduction for acceptance of responsibility. The result: Young was assigned a sentencing range of only two to eight months, based on an adjusted offense level of 8 and a Criminal History Category I.

Galloway objected. He contended that the alleged uncharged conduct could not be used to calculate his sentencing range under section 1B1.3(a)(2) of the Guidelines. The district court agreed, after making the following observation:

> The Court notes that yesterday it sentenced Mr. Galloway's co-defendant, Mr. W.J. Young, to five months imprisonment with two years of supervised release. Mr. Young had pled guilty to Count I of a two count indictment and the Government had moved the dismissal of Count II. The same situation that has occurred here....
>
> I also note that the presentence reports in the two cases contain much identical language; indeed, the paragraphs that you talk about, 13 through 20 [detailing charged and uncharged conduct] are identical....
>
> ....
>
> Now if the facts contained in the presentence report are true, then it is clear that the Defendant Young and Defendant Galloway are really poles apart in terms of their culpability, at least to the degree of their involvement in criminal activity. But the Government has chosen to place identical charges against these two defendants. It charged Mr. Young with the only crime that he committed, at least as reflected by the presentence report—that is, the March 22, 1990 theft.
>
> But the Government has charged Mr. Galloway with only one of eight different crimes which it says he committed, and that was the least serious of the ones mentioned in the report. *And the only*

---

[1]. Based on Criminal History Category VI, the PSR added two points to Galloway's criminal history score for offense behavior commencing less than two years after release from imprisonment. See U.S.S.G. § 4A1.1(e). Galloway's offense of conviction occurred outside this time

frame, but the uncharged conduct alleged in the PSR fell within it.

[2]. The PSR calculation, which the Assistant United States Attorney urges us to uphold, would require Galloway's incarceration for approximately 36 additional months (three years).

*crime, of course, that Mr. Galloway has pled guilty to is the one in Count I— that is, the one that Mr. Young pled guilty to—but I gather the Government wishes the Court to sentence Mr. Galloway as if it had charged him with the eight thefts exceeding $1 million in value and as if he had been convicted of all those charges.*

Now this is a question. The Government could have charged him with all the criminal conduct that they mention in the report and he could have pled guilty or not guilty, and if he had pled not guilty he could have been tried and, if convicted, we would not be dealing with these problems. It would be absolutely clear what the factual basis for the sentence should be. *But the Government didn't choose to follow that path, and I gather it's because of the sentencing guideline laws. I don't think the Government views Mr. Galloway and Mr. Young as equal in culpability. I'm just getting the impression—I may be wrong—they are saying, "Why should we bother? Under the guidelines if he pleds [sic] guilty to one of these, then we will ask the Court to sentence him as if he had been convicted of all of them," and that, they say, is what the guidelines call for. And they may be right, but I am resisting to a certain extent that idea.*

Sent. Tr. at 10–13 (emphasis added).

The district court went on to hold section 1B1.3(a)(2) unconstitutional as applied, reciting the following rationale:

[I]f you look at Amendment V to the Constitution you see that, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury."

Now it says a crime, and the Supreme Court has interpreted crimes to mean anything that might subject one to the possibility of imprisonment for more than six months. And it also says no person shall be held to answer. Well, is Mr. Galloway being held to answer for that conduct here if it's established his sentence will be increased five, six

years? Yes, I think if that crime is proved [at the sentencing hearing], he will be held to answer here.

Amendment VI says: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." In all criminal prosecutions. Are we engaged in a criminal prosecution here, or is it some sort of legerdemain? Are we converting this crime into a sentencing factor? It also says—that is, Amendment VI—that he has a right to be informed of the nature and cause of the accusation. Of course, that would have been done if Amendment V had been followed.

I am going to conclude as a matter of law that in this case the Government may not, in the posture of this record, enhance the sentence of the defendant by proving by a preponderance of the evidence the conduct and acts referred to in paragraphs 13 through 19 because I feel it would violate the defendant's constitutional rights. What we have here is what I have referred to as the Russianizing of our Constitution. The language is quite clear, but we can, by sophistry or otherwise treat it and ignore it and that's what happened in other countries. I don't want to see it happen here.

Sent. Tr. at 28–29. Accordingly, the court refused to permit the Government to prove the uncharged conduct.

The district court's logic need not be addressed. Pursuant to the familiar rubric that courts do not unnecessarily decide constitutional issues, we must initially resolve the statutory question before reaching and deciding the constitutional issues. Did Congress empower the Sentencing Commission to enact the guidelines applicable to this case? After careful research and study of the legislation and its history, we have concluded that the United States Sentencing Commission exceeded its statutory authority in promulgating the uncharged conduct provisions of section 1B1.3(a)(2) to encompass separate property crimes like Galloway's. Accordingly, we affirm Galloway's sentence without reaching the constitutional issues decided by the district court.

## II. DISCUSSION

 In 1984, Congress established the United States Sentencing Commission. Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 217(a), 98 Stat. 1837, 2017–27 (codified as amended at 28 U.S.C. § 991–998 (1988)). Congress charged the Commission, among other things, with promulgating guidelines and policy statements for use in determining and implementing criminal sentences. 28 U.S.C. § 994(a). Thereafter, the Commission promulgated a comprehensive set of guidelines and policy statements, including the guideline at issue here, entitled "Relevant Conduct," U.S.S.G. § 1B1.3. The relevant conduct guideline reads:

*Relevant Conduct (Factors that Determine the Guideline Range)*

(a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts or omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts or omissions; and

(4) any other information specified in the applicable guideline.

(b) *Chapters Four (Criminal History and Criminal Livelihood) and Five (Determining the Sentence).* Factors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines.

The Chairman of the Sentencing Commission, United States Circuit Judge William W. Wilkins, Jr., and General Counsel John R. Steer have called the relevant conduct guideline "the cornerstone of the federal sentencing guideline system." Wilkins & Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* 41 S.C.L.Rev. 495, 496 (1990) [hereinafter *Relevant Conduct*]. In promulgating the relevant conduct guideline, the Commission adopted a so-called "real offense" philosophy. *See* U.S.S.G. § 1B1.3, comment. (backg'd.). In other words, the Commission sought to punish offenders for "the actual conduct ... engaged [in] regardless of the charges for which [the defendant] was indicted or convicted." *See* U.S.S.G. Ch. 1, Pt. A.4(a), p.s.[3] To this end, subsection (a)(2) of the relevant conduct guideline requires courts, in determining

---

**3.** As authority for adopting a real offense system, Wilkins and Steer state only the following: "The House version of sentencing reform legislation generally provided for a strict, offense of conviction sentencing guideline system. Conversely, the Senate version, *while it did not expressly specify,* seemed to lean toward a real offense system." Wilkins & Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* 41 S.C.L.Rev. 495, 501 (1990) (footnotes omitted) (emphasis added).

We have reviewed the authorities cited in the authors' footnotes. We agree that the House version incorporated, essentially, a charge offense philosophy. Among other things, the House version required the court to "adhere as closely as possible to the principle that similar offenders convicted of similar offenses committed under similar circumstances should receive similar sentences." H.R. 6012, 98th Cong., 2d Sess. § 2 (1984) (proposed 18 U.S.C. § 3521(2)). We cannot agree, however, that the Senate version, which Congress later enacted, adopted a real offense system to the extent the authors assert. *See, e.g.,* Sentencing Reform Act of 1984, Pub.L. No. 98–473, §§ 212(a), 217(a), 98 Stat. 1837, 1987–92, 2017–27 (codified as amended at 18 U.S.C. §§ 3551–3559 (1988) (amended 1990); 28 U.S.C. §§ 991–998 (1988)). As we later discuss, these provisions do not authorize

an offender's base offense level, to include "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

Subsection 1B1.3(a)(2) applies to all offenses, whether charged or uncharged, that ordinarily must be grouped together, pursuant to U.S.S.G. § 3D1.2(d), for purposes of calculating the applicable sentencing range. *Id.*, comment. (n.2). Offenses must be grouped together, under section 3D1.2(d), whenever "the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."[4] Galloway's offense, theft from interstate shipment, falls within this grouping requirement. *See* U.S.S.G. § 3D1.2(d) (incorporating by reference U.S.S.G. § 2B1.1).

Our review focuses on whether the Commission exceeded its statutory authority, or acted arbitrarily, in drafting U.S.S.G. § 1B1.3(a)(2) to include uncharged property crimes like Galloway's. *See Fidelity Fed. Savs. & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 154, 102 S.Ct. 3014, 3022–23, 73 L.Ed.2d 664 (1982). At oral argument, we inquired where the Sentencing Commission derived the authority to promulgate the uncharged conduct provisions of section 1B1.3(a)(2). The Government could not cite us to any statutory provision in the enabling act or elsewhere. We also asked the Government to explain the Commission's rationale for incorporating the grouping provisions of section 3D1.2(d) into the relevant conduct guideline. On this issue, we received an equally unsatisfactory response from the Government.

After a thorough search of the pertinent statutes and legislative history, we now conclude that the Sentencing Commission

exceeded the scope of its statutory authority in promulgating the uncharged conduct provisions of section 1B1.3(a)(2) under the facts of this case. *Cf. United States v. Davern,* 937 F.2d 1041, 1043–47 (6th Cir. 1991) (Sentencing Commission contravened explicit statutory and legislative directives in promulgating procedures governing departures from Guidelines). In so holding, we make clear that our ruling overturns subsection (a)(2) of the relevant conduct guideline only insofar as it applies to separate property crimes that, like Galloway's, occurred on separate days, at separate places, targeted separate victims and involved a variety of merchandise. We draw no conclusions about the validity of section 1B1.3(a)(2) with respect to other types of offenses presenting other factual circumstances. *Cf. United States v. Kappes,* 936 F.2d 227, 230 (6th Cir.1991) (section 1B1.3(a)(2) is well-suited to drug cases, but does not apply to defendant who made false statements on government forms on separate occasions). We also make clear that our holding in no way infringes on the traditional authority of sentencing courts to consider unconvicted criminal conduct for an applicable sentence within the guideline range. *See infra* p. 905. We address these issues.

## A. Scope of Authority

The Commission's authority to issue sentencing guidelines derives from 28 U.S.C. § 994. Subsection 994(a) directs the Commission to promulgate and distribute "guidelines, *as described in this section,* for use of a sentencing court in determining the sentence to be imposed in a criminal case." 28 U.S.C. § 994(a)(1) (emphasis added). The remainder of section 994 lays out a general floor plan for guideline promulgation, including several explicit specifications. 28 U.S.C. § 994(b)–(x). The Commission has no discretion to ignore these statutory directives. *See* S.Rep. No. 225, 98th Cong., 2d Sess. at 163 (1983), *reprint-*

---

the Commission to promulgate guidelines for the purpose of punishing separate instances of factually distinct *unconvicted* criminal conduct.

4. Section 3D1.2(d), as written, applies to "multiple counts" of criminal conduct. The commentary to section 1B1.3(a)(2) makes clear that, for

the purposes of the relevant conduct guideline, the grouping provisions of section 3D1.2(d) apply regardless of whether the offenses at issue were actually charged as multiple counts. U.S.S.G. § 1B1.3(a)(2), comment. (n. 2 & backg'd.).

*ed in* 1984 U.S.Code Cong. & Admin.News 3182, 3346 ("The sentencing guidelines ... must be consistent with all pertinent provisions of titles 18 and 28"). We nonetheless determine that, in at least two instances, the Commission failed to follow express and implied legislative directives.

### 1. *Incremental Punishment*

In section 994(*l*), Congress provides specific instructions about how the Commission should punish multiple instances of criminal misconduct. Subsection 994(*l*)(1) authorizes incremental punishment "in each case where a defendant *is convicted of*" multiple criminal offenses.[5] (emphasis added). The clear implication is that Congress did not intend the guidelines to punish separate instances of unconvicted conduct incrementally. *See Davern,* 937 F.2d at 1051; *see also United States v. Miller,* 910 F.2d 1321, 1329–30 (6th Cir.1990) (Merritt, C.J., dissenting) ("The provision of the guideline enabling legislation authorizing 'incremental' penalties plainly requires conviction of the offense for which the sentence is imposed"). Any other interpretation would render the words chosen by Congress meaningless. Had Congress wanted separate unconvicted offenses to be punished incrementally, it could have said so simply by replacing the phrase "is convicted of" with the word "commits."

The Senate Report explaining subsection 994(*l*) confirms that Congress intended the incremental punishment provisions to apply only to valid criminal convictions. It states:

> Subsection (*l*) directs the Commission to promulgate guidelines that reflect the appropriateness of imposing an incremental penalty for each offense if a defendant is convicted of a number of offenses that are part of the same course of conduct, and if a defendant is convict-

ed of multiple offenses committed at different times.... If no such incremental penalty were provided (e.g., were all sentences to be imposed without regard to the commission of other offenses and made to run concurrently), an offender who commits one offense would be faced with no deterrent to the commission of another during the interval before he is called to account for the first. It is the Committee's intent that, to the extent feasible, the sentences for each of the multiple offenses be determined separately and the degree to which they should overlap be specified. *Under this approach, if the conviction for one of the offenses is overturned, it will be unnecessary to recalculate the sentence.*

S.Rep. No. 225, 98th Cong., 2d Sess. at 176–77 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3359–60 (emphasis added).

The Senate Report unequivocally requires any overturned convictions to be excluded from the sentencing calculation. This requirement necessarily applies to convictions overturned on legal technicalities, as well as convictions overturned due to the Government's failure to prove guilt beyond a reasonable doubt. The clear implication is that Congress intended to afford defendants the full panoply of constitutional, statutory and procedural protections before subjecting them to incremental punishment for multiple offenses.[6]

The relevant conduct guideline promulgated by the Commission, however, fails to comport with these directives. To the contrary, the relevant conduct guideline *requires* offenders' sentences to be increased incrementally for a broad range of unconvicted conduct. It provides that an offender's base offense level *"shall* be deter-

---

**5.** Subsection 994(*l*)(1) provides, in relevant part—

> The Commission shall insure that the guidelines promulgated pursuant to subsection (a)(1) reflect:
> (1) the appropriateness of imposing an incremental penalty for each offense in a case in which a defendant *is convicted of*—
> (A) multiple offenses committed in the same course of conduct that result in the

exercise of ancillary jurisdiction over one or more of the offenses; and
> (B) multiple offenses committed at different times....

28 U.S.C. § 994(*l*) (emphasis added).

**6.** The excerpt from the Senate Report may call into question the interpretation, now widely accepted, that the Guidelines may properly permit incremental sentence enhancement for acquitted conduct due to the lessened burden of proof at the sentencing hearing. *E.g., United States v.*

mined" based on such unconvicted offenses. U.S.S.G. § 1B1.3(a)(2) (emphasis added). This provision applies even where, as here, the conduct consisted of factually and temporally distinct crimes against property. We do not think a guideline of this scope can be supported in view of the express and implied legislative directives addressing the imposition of incremental punishment for criminal offenses.[7]

### 2. Sentencing Disparity

Subsection 994(f) directs the Commission, in promulgating guidelines, to pay "particular attention to the requirements of subsection 991(b)(1)(B) for providing certainty and fairness in sentencing and reducing unwarranted sentence disparities."[8] This latter subsection, 28 U.S.C. § 991(b)(1)(B), requires the Commission to establish policies and practices that avoid "unwarranted

sentence disparities among defendants with similar records *who have been found guilty of similar criminal conduct." Id. See also* S.Rep. No. 225, 98th Cong., 2d Sess. at 161, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3344. The plain language of this subsection indicates that Congress sought, in large part, to equalize sentences based on *convicted* criminal conduct.

The legislative history confirms this interpretation. According to the Senate Report, subsection 991(b)(1)(B) underscores the major premise of the sentencing guidelines: the need to avoid unwarranted sentencing disparity. S.Rep. No. 225, 98th Cong., 2d Sess. at 78, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3261. Consistent with this objective, the subsection establishes two factors as "the principle determinants of whether two offend-

*Averi,* 922 F.2d 765, 765–66 (11th Cir.1991) (per curiam); *United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 180–82 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Dawn,* 897 F.2d 1444, 1449–50 (8th Cir.) (dictum), *cert. denied,* — U.S. ——, 111 S.Ct. 389, 112 L.Ed.2d 400 (1990); *United States v. Mocciolo,* 891 F.2d 13, 16–17 (1st Cir. 1989); *United States v. Isom,* 886 F.2d 736, 738–39 & n. 3 (4th Cir.1989). *But see United States v. Brady,* 928 F.2d 844, 850–52 (9th Cir.1991) (acquitted conduct may not be used to enhance Guidelines sentence); *United States v. Juarez–Ortega,* 866 F.2d 747, 749 (5th Cir.1989) (per curiam) ("sentencing court was not relying on facts disclosed at trial to punish the defendant for the extraneous offense, but to justify the heavier penalties for the offenses for which he was convicted").

7. In titles 18 and 28, Congress sometimes uses the word "offense" without including other qualifying language. Viewed in context, however, we think this term must be interpreted as a reference to convicted criminal conduct.

For example, in accordance with titles 18 and 28, the Commission is required to assure that its guidelines "reflect the seriousness of the offense, [ ] promote respect for the law, and [ ] provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A) (incorporated by reference into 28 U.S.C. §§ 991(b)(1), 994(f)). Significantly, section 3553 does not come into play unless a defendant *"has been found guilty* of an offense." *See* 18 U.S.C. § 3551 (emphasis added). Moreover, the Senate Report strongly suggests that the term "offense," as used in this subsection, refers to convicted criminal conduct. S.Rep. No. 225, 98th Cong., 2d Sess. at 76

("the sentence should not ... differ substantially from the sentence given to another similarly situated defendant *convicted* of a similar offense under similar circumstances"), *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3259 (emphasis added). Notably, this portion of the Senate Report cross-references 28 U.S.C. § 991(b)(1)(B), which, as we observe *infra* pp. 903–04, focuses on conduct of which a defendant "has been found guilty." S.Rep. No. 225, 98th Cong., 2d Sess. at 76 n. 163, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3259.

Subsection 994(c) provides another example. In that subsection, Congress directs the Commission to determine the relevance of various factors in establishing categories of offenses for the sentencing guidelines. Congress lists, as the first factor, "the grade of the offense." 28 U.S.C. § 994(c)(1). Since only charged or convicted offenses are typically graded, this provision suggests that Congress intended the word "offense" to denote the offense of conviction.

8. Section 991(b)(1)(B) provides:
(b) The purposes of the United States Sentencing Commission are to—
(1) establish sentencing policies and practices for the Federal criminal justice system that—
....
(B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records *who have been found guilty of similar criminal conduct* while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices[.]

ers' cases are so similar that a difference between their sentences should be considered a disparity that should be avoided unless it is warranted by other factors." *Id.* at 161, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3344. Under the statute, these factors are: (1) the prior records of offenders; and (2) the criminal conduct for which they have been found guilty. *See id.*[9]

The relevant conduct guideline promulgated by the Commission strays far from this goal. The guideline requires increased penalties for unconvicted conduct no matter how minor the offense of conviction may be in proportion to the unconvicted offenses at issue. This requirement has caused considerable and widespread concern in both sentencing and reviewing courts. Indeed, since its promulgation, courts have repeatedly struggled with the tendency of the relevant conduct provisions to dwarf the actual count of conviction. *See, e.g., United States v. Townley,* 929 F.2d 365, 369 (8th Cir.1991) (uncharged conduct produced seven-fold increase in sentencing range); *United States v. Brittman,* 687 F.Supp. 1329, 1335 (E.D.Ark. 1988), *rev'd in part,* 872 F.2d 827 (8th Cir.1989) (uncharged conduct quadrupled sentencing range); *United States v. Ebbole,* 917 F.2d 1495, 1496 (7th Cir.1990) (uncharged conduct resulted in tripling of sentence); *Miller,* 910 F.2d at 1329 (Merritt, C.J., dissenting) (same); *see also United States v. Sleet,* 893 F.2d 947, 948 (8th Cir.1990) (uncharged conduct essentially tripled sentence); *United States v. Cohoon,* 886 F.2d 1036, 1037 (8th Cir.1989) (uncharged conduct essentially doubled

sentence). As the numerous examples indicate, these compounded sentences are not occasional aberrations, but predictable consequences of the relevant conduct provisions now in effect. As such, these provisions violate Congress' explicit instruction that the Commission, as its *primary* task, seek to equalize sentences between defendants *found guilty* of similar conduct.

Given the statutory provisions and legislative history, we now conclude that the Commission exceeded its authority under the enabling legislation in drafting subsection 1B1.3(a)(2) of the relevant conduct guideline to encompass the unconvicted criminal conduct at issue in this case. We hold the provision unenforceable insofar as it permits offenders to be systematically penalized for factually and temporally distinct property crimes that have neither been charged by indictment nor proven at trial.[10]

We applaud the district court for its implicit recognition of the principles set forth in our holding. In view of the statutes and legislative history, we consider it highly appropriate under the facts of this case that the district court refused to sentence Galloway and Young for materially different conduct. The sentencing transcript makes clear that the district court recognized the sentencing disparity that strict adherence to section 1B1.3(a)(2) would create with respect to two offenders indicted and convicted of identical offenses. The transcript also makes clear that the district court recognized the uncharged crimes in question as separate and factually distinct instances of criminal conduct. Accordingly, we think the circumstances of this case

28 U.S.C. § 991(b)(1)(B) (emphasis added).

**9.** To be sure, Congress did not intend these two factors to "eliminate justifiable differences" between the sentences of persons convicted of similar conduct who have similar records. S.Rep. No. 225, 98th Cong., 2d Sess. at 161, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3344. Indeed, Congress required the Commission to consider a variety of additional factors and to determine what impact, if any, "would be warranted by differences among defendants with respect to those factors." *Id.* However, Congress nowhere enumerates unconvicted criminal conduct as one of these factors. *See generally* 28 U.S.C. §§ 991, 994; 18 U.S.C. § 3553.

**10.** We observe language to the contrary in *United States v. Ebbole,* 917 F.2d 1495, 1501 (7th Cir.1990), and support for our decision from *United States v. Miller,* 910 F.2d 1321, 1329–30 (6th Cir.1990) (Merritt, C.J., dissenting). In these drug trafficking cases, quantity does not comprise an element of the crime.

In Galloway's crime under 18 U.S.C. § 659, quantity *does* constitute an element of the crime. At least with regard to the uncharged separate property crimes which the Government asserts as a basis for the heavier sentence than that imposed by Judge Eisele, we are in agreement with the rationale offered by Chief Judge Merritt in *Miller,* rather than the dictum on this question by the Seventh Circuit.

certainly provided the district court with justification for acting to eliminate this guideline-imposed disparity.

■ We observe, however, that a sentencing judge retains still another alternative for rejecting a proposed sentence that seems unfair, improper, disproportionate or possibly unconstitutional as a result of mandatory penalty provisions for unconvicted conduct. The sentencing court, in appropriate cases, need not accept tendered proof of alleged other crimes where that proof rests on an unreliable basis. In addition, the sentencing court remains free to determine, under appropriate circumstances, that these alleged crimes have not been shown by a preponderance of the evidence, the usual standard required for proof of uncharged offenses under our cases. *See United States v. Townley*, 929 F.2d at 369–70 & n. 4.

### 3. Historic Sentencing Authority

Having concluded that the Commission exceeded its authority, we add a necessary caveat. Nothing in our holding is intended to infringe on the district court's traditional sentencing authority to consider unconvicted conduct.[11] The appropriate place for such consideration, however, is under U.S.S.G. § 1B1.4. This guideline permits courts to consider potentially relevant information in determining the sentence to impose *within the specified Guidelines range*.

Section 1B1.4 essentially codifies the rule, under the pre-Guidelines system, that permitted district courts to consider information about a defendant's background, character and conduct almost without limitation. *See United States v. Grayson*, 438 U.S. 41, 45–50, 98 S.Ct. 2610, 2613–16, 57 L.Ed.2d 582 (1978); *Williams v. New York*, 337 U.S. 241, 246–47, 69 S.Ct. 1079, 1082–83, 93 L.Ed. 1337 (1949). As a practical matter, under the prior system, the court's discretion to consider uncharged criminal conduct fell at the outer parameters of its sentencing authority. It was a potentially troublesome power, but justified by the

prior system's need to insure that the court obtained the most complete picture possible before exercising its sentencing discretion. *See Grayson*, 438 U.S. at 53–54, 98 S.Ct. at 2617–18; *see also Ebbole*, 917 F.2d at 1496 (recognizing unfairness of sentencing defendant on basis of unconvicted conduct). Significantly, however, even under the prior system of discretionary sentencing, courts could not use their power to consider uncharged conduct to achieve "the impermissible sentencing practice of incarcerating for the purpose of saving the Government the burden of bringing a separate and subsequent ... prosecution." *See Grayson*, 438 U.S. at 53, 98 S.Ct. at 2617.

### III. CONCLUSION

Accordingly, without reaching or passing upon the constitutional issues decided by the district court, we affirm the sentence here imposed by the district court. We conclude that, as applied in this particular case, the United States Sentencing Commission exceeded its authority in promulgating the uncharged conduct provisions of U.S.S.G. § 1B1.3(a)(2) to encompass separate and factually distinct criminal property offenses.

### ORDER.

#### Nov. 20, 1991.

Appellant's petition for rehearing with suggestion for rehearing en banc is granted. The opinion and judgment of this court filed September 9, 1991, are hereby vacated. The parties may file supplemental briefs not to exceed fifteen pages within thirty days from the date of this order. This case will be set down for en banc rehearing on Monday, January 6, 1992, at 9:00 a.m., in St. Louis, Missouri.

---

**11.** It could be argued that the relevant conduct guideline promulgated by the Commission in

fringes upon this traditional authority by mandating increased punishment for such conduct.