UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan QUESADA, Defendant–Appellant.

No. 91–50479.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 7, 1992.

Decided Aug. 5, 1992.

Gerald T. McFadden, San Diego, Cal., for defendant-appellant.

Randy K. Jones, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BOOCHEVER, NORRIS and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Juan Quesada pleaded guilty to the possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1988). His appeal is directed to objections to the

Sentencing Guidelines, essentially contending that they fail to conform with the governing statutes. His contentions are not frivolous, but they are ultimately unpersuasive. We affirm his conviction and sentence.

## FACTS

On June 21, 1990 an undercover agent for the Drug Enforcement Administration met with Joaquin Torres–Perez and negotiated for the delivery of cocaine. Later in the day Torres introduced Quesada to women confidential informants, who continued the negotiations. It was finally agreed that the cocaine would be delivered on June 25, 1990. Quesada was arrested as the delivery was made. The amount of cocaine he was attempting to deliver was 4.99 kilograms.

Six co-defendants were charged with Quesada. The presentence report indicates that Torres and Quesada were the principals. Quesada accepted his responsibility for the crime.

Quesada is 41 years old, is married and has two daughters age 11 and 7. He and his family live in a one-room house in Tijuana, Mexico. His wife has a heart condition and one daughter has an intestinal problem. He is the sole support of the family.

In Mexico Quesada worked at collecting scrap metal and selling it to a metal processor. He entered the United States without documentation about a month before his arrest. In San Diego he met Torres and the confidential informants, becoming involved in the negotiations and the successful attempt to locate cocaine for sale.

## PROCEEDINGS

Quesada pleaded guilty but raised several objections to the court applying the Sentencing Guidelines. His appeal is based on these objections, which we consider in turn.

## ANALYSIS

■ Quesada argues that several of the guidelines sections on which the district court relied are inconsistent with relevant provisions of the Sentencing Reform Act. Congress has given us the authority to invalidate a guidelines section that is contrary to the Sentencing Reform Act. 28 U.S.C. § 994(a) states that guidelines and policy statements promulgated by the Sentencing Commission must be "consistent with all pertinent provisions of [title 28] and title 18." In interpreting that command, the Third Circuit concluded that "[t]o the extent that the enabling legislation contains specific direction, the guidelines must comport with that direction." *United States v. Nottingham*, 898 F.2d 390, 393 (3rd Cir.1990). We agree with the Third Circuit. Accordingly, we proceed to consider appellant's statutory challenges to the Guidelines.

■ Quesada first contends that the sentencing scheme embodied in the Guidelines is inconsistent with the first sentence of 18 U.S.C. § 3553. 18 U.S.C. § 3553 begins with subsection (a), entitled "Factors to be considered in imposing a sentence." The first sentence of this section declares: "The court shall impose a sentence, sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Quesada contends that the Sentencing Guidelines are in conflict with this sentence because there is no indication that the Sentencing Commission has worked out guidelines that meet the requirement "sufficient, but not greater than necessary."

Quesada's focus on a single sentence in the statute is mistaken. Section (b) of the same statute is entitled "Application of guidelines in imposing a sentence" and goes on to say: "The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and that should result in a sentence different from that described." The reference to subsection (a)(4) is a reference to "the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(1)".

We cannot read the statute as though Congress had intended to set up one standard in the first sentence of subsection (a) and another standard in subsection (b). Read harmoniously as a whole, the statute requires a court to impose a sentence of the kind and range established by the Sentencing Commission. No command exists in the statute that the court devise its own standard of what is "sufficient, but not greater than necessary." No conflict between (a) and (b) was intended; none exists.

■ Quesada contends that there is another inconsistency between what the Sentencing Commission did and subsection (a) of 18 U.S.C. § 3553. The latter, in enumerating the considerations that a court should take into account, speaks of "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Quesada argues that the "just punishment" specified by the statute is different from "just deserts" and that the Sentencing Commission in its introduction to the guidelines followed in part the principle of just deserts. *See* U.S.S.G. Ch. 1, Pt. A3.

The distinction Quesada attempts to make is unpersuasive. The legislative report on which he relies uses the very words of the statute just quoted and goes on to say: "This purpose—essentially the 'just deserts' concept—should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct." Committee on the Judiciary, Report No. 98–225, 98 Cong. 1st Sess. 1983, p. 75. There was no departure from the statute in the Sentencing Commission taking into account "just deserts" in setting the guidelines.

■ Next, Quesada contends that the statute creating the Sentencing Commission imposed upon it the duty to take into account a variety of purposes in sentencing, including, e.g., "the circumstances under which the offense was committed which mitigated or aggravated the seriousness of the offense" and "the community view of the gravity of the offense." 28 U.S.C. §§ 994(c)(2) and (4). But, Quesada maintains, the Commission has imposed sentences in drug cases based simply on the quantity of the drugs. U.S.S.G. § 2D1.1.

Again, Quesada finds a conflict where there is none. Congress has prescribed the penalties for possession of cocaine with intent to distribute. The penalties are set in terms of specified quantities of the drug. 21 U.S.C. § 841(b)(1)(B). The Commission simply followed the lead of Congress in setting the guidelines for the crime with attention to the quantitative scheme set up by the statute.

Finally, Quesada argues that the Commission departed from its statutory mandate in failing to take into account "poverty and family responsibility."

■ As to poverty, Quesada is factually mistaken. The governing statute prescribes: "The Commission shall assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socio-economic status of offenders." 28 U.S.C. 994(d). Poverty could no more be taken into account than religion or color of skin.

■ As to family responsibilities, the statute does mention these as a factor that the Commission should take into account but "only to the extent that they do have relevance." *Id.* In the ordinary case family responsibilities have no relevance to the possession of cocaine with intent to distribute. In the extraordinary case of aberrant behavior they do. *See, e.g., United States v. Cook,* 938 F.2d 149 (9th Cir.1991). The argument made on behalf of Quesada is addressed to the guidelines and not presented as a case of aberrant behavior. There was no statutory obligation upon the Commission to consider family responsibilities as a relevant factor in drug cases.

■ At argument, appellant asked us to remand the case so that the district court may decide whether it wishes to exercise its discretion to depart down on the basis of such factors as youthful lack of guidance. *See, e.g., United States v. Floyd,*

945 F.2d 1096, 1102 (9th Cir.1991). Because appellant failed to present this issue to the district court, we deem it waived.

Sentencing is one of the most difficult tasks of a court. No magic formula can determine the right proportion between crime and punishment. The Sentencing Commission, basing itself empirically on past practice, has made a good faith attempt to develop a reasonable approach to an almost intractable problem. Its efforts are recognized by all not to be perfect. Its cramping of the discretion that must be exercised by the sentencing judge is regretted by many. Nonetheless, the guidelines cannot be condemned in this case for any failure to follow the mandate laid down by Congress.

AFFIRMED.