**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Peter Chui Lin WONG, Defendant–
Appellant.**

No. 90–10356.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1992.

Decided Aug. 10, 1993.

Harold J. Rosenthal, Riordan & Rosenthal, San Francisco, CA, for defendant-appellant.

Rory K. Little, and Daniel A. Saunders, Law Student Intern, U.S. Atty.'s Office, San Francisco, CA, for plaintiff-appellee.

Before: SCHROEDER, NORRIS, and BRUNETTI, Circuit Judges.

SCHROEDER, Circuit Judge:

In this case, we once again are asked to review the relevant conduct provisions of the Sentencing Guidelines, U.S.S.G. § 1B1.3. Appellant Peter Chui Lin Wong contends that these provisions, which allow the consideration of total losses from groupable offenses as identified in section 3D1.2(d), violate the statutory mandate of the Sentencing Guidelines' authorizing legislation. He asks us to determine that the Sentencing Commission exceeded the scope of its statutory authority when it promulgated the relevant conduct provisions of the Sentencing Guidelines. The Eighth Circuit en banc has recently rejected a similar contention, *United States v. Galloway*, 976 F.2d 414 (8th Cir. 1992) (en banc). We conclude that we must reach the same result.

Wong was charged in 1989 with 18 counts of bank fraud in violation of 18 U.S.C. § 1344 and five counts of false claims in violation of 18 U.S.C. § 1001 in a superseding indictment. Wong was alleged to have used his business, the Pacific Atlantic Trading Company ("PATCO"), to receive loans or extensions of credit from a number of banks based on false bills of lading. Wong pleaded guilty to two counts. The first was a bank fraud count against the Bank of Trade under 18 U.S.C. § 1344. The second was another charge of bank fraud against the Bank of Credit and Commerce International.

Bank fraud, as a crime of fraud, falls within U.S.S.G. § 2F1.1, and so is a groupable offense under section 3D1.2 of the Sentencing Guidelines. The relevant conduct provisions allow the sentencing judge to take account of "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction" for crimes which qualify under section 3D1.2(d). U.S.S.G. § 1B1.3(a)(2). For bank fraud, the "offense level is determined largely on the basis of the total amount of harm or loss," which here would be the total financial loss from Wong's scheme. U.S.S.G. § 3D1.2(d).

The plea agreement identified a total amount of loss of $4.3 million arising from Wong's scheme; this amount included losses from all the indicted charges. Such an amount would lead to an offense level of 18 and a 27–33 month sentence range. At sentencing, the government urged the district court to consider a higher figure of $8.3 million, based on losses from the total scheme, including losses from crimes for which Wong was not indicted. The Presentence Report used the $8.3 million figure and recommended an offense level of 19 and a sentence range of 30–37 months.

Appellant argued at sentencing that his sentence should be based only on the total losses from the two counts to which he pleaded guilty, amounting to $100,000. Appellant's $100,000 figure would result in an offense level of 13 and a sentence of 12 to 18 months.

The district court imposed a sentence of 30 months, based on an offense level of 18. The sentence was consistent with the $4.3 million figure described in the plea agreement.

Appellant's first argument is that this court's panel decision in *United States v.*

*Fine,* 946 F.2d 650 (9th Cir.1991), prohibits the district court from relying on dismissed counts in determining the applicable guideline range. However, this court has since ruled en banc that the relevant conduct provisions allow the sentencing judge to take into account groupable offenses which were charged but to which the defendant has not pleaded guilty. *United States v. Fine,* 975 F.2d 596 (9th Cir.1992) (en banc). Both Wong and Fine were guilty of fraud, crimes which fall under section 2F1.1 of the Guidelines, and so are groupable under the relevant conduct provisions of section 1B1.3(a)(2). The en banc decision in *Fine* controls and forecloses the interpretation urged by appellant.

■ Appellant next argues that if the relevant conduct provisions of the Guidelines permit consideration of the fraud offenses that were charged but dismissed, then the relevant conduct provisions exceed the statutory mandate of the United States Sentencing Guidelines. 28 U.S.C. §§ 991, 994. Although *Fine* does not directly address the question of whether the relevant conduct provisions are authorized by the statute, it does explicitly recognize that prior to the Sentencing Guidelines, judges had "'broad latitude ... [to] consider evidence of counts for which an indictment has been dismissed.'" *Fine,* 975 F.2d at 600 (quoting *United States v. Lewis,* 862 F.2d 748, 750 (9th Cir.1988), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1169, 103 L.Ed.2d 227 (1989)). Nothing in *Fine* or in the history of the Guidelines' authorizing statutes suggests that Congress intended to circumscribe that latitude. Appellant points to 28 U.S.C. § 991(b)(1)(B) and § 994(f), which direct the Sentencing Commission to avoid sentencing disparities among defendants found guilty of "similar criminal conduct."[1] He contends that these sections forbid any sentence that takes into account crimes which the defendant may have committed but which were not part of the crime of conviction. Yet the language relied upon contains no such limiting principle. Indeed, the message Congress has conveyed is to avoid disparity but to retain the flexibility to consider both "mitigating" and "aggravating" factors. In 28 U.S.C. § 994(c)(2) Congress authorized the Commission to promulgate guidelines that take into account "the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense." The relevant conduct provisions can be seen as an effort to implement that objective. Whatever we may conclude about the wisdom of the Commission in directing courts to impose sentences based on conduct related to, but not part of, the crime of conviction, we cannot conclude that Congress has forbidden the Commission to do so.

The Eighth Circuit has recently rejected a similar statutory challenge to the relevant conduct provisions. *United States v. Galloway,* 976 F.2d 414 (8th Cir.1992) (en banc). The majority in *Galloway* agreed that section 1B1.3 is authorized by the broad grant of authority in § 994(c)(2) of the statute.

Section 994(c)(2) of title 28 allows the Commission to promulgate guidelines that take into account "the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense." More generally, the preceding language in section 994(c) orders the Sentencing Commission to "consider whether [certain factors later enumerated within the statute], *among others,* have

---

1. 28 U.S.C. § 991(b)(1)(B) provides:

   (b) The purposes of the United States Sentencing Commission are to—
     (1) establish sentencing policies and practices for the Federal criminal justice system that—

   *   *   *   *   *   *

   (B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices....

   28 U.S.C. § 994(f) provides:

   (f) The Commission, in promulgating guidelines pursuant to subsection (a)(1), shall promote the purposes set forth in section 991(b)(1), with particular attention to the requirements of subsection 991(b)(1)(B) for providing certainty and fairness in sentencing and reducing unwarranted sentence disparities.

any relevance" in establishing guidelines and policy statements to determine sentences. 28 U.S.C. § 994(c) (emphasis added). The open-ended language "among others" invites the Commission to consider sentencing factors that Congress failed to specifically list. *See* S.Rep. No. 98–225, 98th Cong., 2d Sess. at 169 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3352 ("The Sentencing Commission is also required under subsection (c) [of section 994] to determine whether other factors not specifically listed are relevant to the sentencing decision.").

We are satisfied that within the broad grants of authority to the Commission, this specific statutory language of section 994(c)(2) gives the Commission full authority to adopt a relevant conduct guideline, although it certainly cannot be said that the Commission was required to do so. *Id.* at 420. As the Eighth Circuit went on to point out, even if the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* (citing *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)).

The Fifth, Sixth and Seventh Circuits have also found that the relevant conduct provisions fall within the statutory mandate. *See United States v. Davern,* 970 F.2d 1490 (6th Cir.1992) (en banc); *United States v. Thomas,* 932 F.2d 1085 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991 and 1992); *United States v. Ebbole,* 917 F.2d 1495 (7th Cir.1990). We agree with these circuits that section 1B1.3 falls within the broad meaning of the Sentencing Guidelines statute.

■ The holding which the dissenting judges in *Galloway* would like to reach is actually a very narrow one. It is stated by Judge Beam: "I would hold the provision unenforceable insofar as it permits offenders to be systematically penalized for factually

and temporally distinct property crimes that have neither been charged by indictment nor proven at trial." 976 F.2d at 433. In our case, Wong's crimes were charged by the indictment, so that even under the dissenters' view articulated in *Galloway,* Wong's entire fraud scheme would be considered at sentencing. While appellant's brief refers to uncharged crimes, the district court based its sentence on total losses from the indicted offenses, not on uncharged conduct. The sentence is even based upon the amount identified in the plea agreement. Here, despite the remonstrations of Judge Norris' dissent, application of the Guidelines has worked no unfairness.

■ The appellant's constitutional challenge to the relevant conduct provisions is precluded by our decision in *United States v. Restrepo,* 946 F.2d 654 (9th Cir.1991) (en banc). We there held that the preponderance of the evidence standard at sentencing does not violate due process where the resulting sentence is not exceptionally disproportionate to that which would be imposed on the conduct underlying the crimes proved at trial.

Finally, appellant's argument that the district court erred in applying the multiple counts section of the Guidelines, § 3D1.1, is misplaced. Wong was sentenced under section 1B1.3, not section 3D1.1. The section 3D1.2 provisions were used to identify what counts as a "groupable" offense under section 1B1.3.

We therefore reject appellant's arguments and AFFIRM the sentence of the district court.

WILLIAM A. NORRIS, Circuit Judge, dissenting:

This appeal requires us to decide whether the Sentencing Commission exceeded the limits of its statutory rulemaking authority in promulgating guideline 1B1.3(a)(2), the controversial [1] relevant conduct provision. I believe that it did.

---

1. Two en banc decisions upholding the guideline last year produced between them five impassioned dissents. *See United States v. Galloway,* 976 F.2d 414, 428 (8th Cir.1992) (en banc)

(Beam, J., dissenting) (§ 1B1.3 exceeds statutory authority); *id.* at 436 (Bright, J., dissenting) (§ 1B1.3 is unconstitutional); *United States v. Davern,* 970 F.2d 1490, 1501 (6th Cir.1992) (en

## I

In the Sentencing Reform Act, Congress created the Sentencing Commission and charged it with the mission of promulgating sentencing guidelines—that is, of defining categories of offenses and categories of defendants and establishing sentencing ranges for each combination of categories. *See* 28 U.S.C. § 994(b)(1). The Congress did not, however, give the Commission carte blanche in carrying out its mission. Rather, Congress "legislated a full hierarchy of punishment ... and stipulated the most important offense and offender characteristics to place defendants within these categories." *Mistretta v. United States*, 488 U.S. 361, 377, 109 S.Ct. 647, 657, 102 L.Ed.2d·714 (1989). That is, Congress spelled out with great care and specificity how the Sentencing Guidelines should structure criminal punishment.

The statute isolates two factors as the major determinants of a sentence: the seriousness of the offense of conviction and the defendant's criminal record. 28 U.S.C. § 991(b)(1)(B). In choosing these two factors, Congress focuses on criminal convictions, both current and prior. Yet contrary to this congressional directive, the Sentencing Commission has created a relevant conduct guideline that punishes unconvicted con-

duct, and to such a degree that unconvicted conduct is often as important as convicted conduct in fixing a sentence. In so doing, the Sentencing Commission has, in the words of its Chairman and General Counsel, established relevant conduct as the "cornerstone" of the Sentencing Guidelines. *See* William W. Wilkins, ·Jr. & John R. Steer, "Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines," 41 *S.Car.L.Rev.* 495 (1990). I see a fundamental problem with the Commission's decision to make relevant conduct the cornerstone of the guidelines: Congress, not the Commission, has the authority to lay cornerstones, and Congress has chosen convicted, not unconvicted conduct, as the cornerstone and building blocks[2] of a guidelines sentence.

## II

Under the relevant conduct provision, defendants found guilty of specified crimes are punished not only for the offense of conviction, but also for other crimes the sentencing judge finds they have committed, so long as the other crimes form "part of the same course of conduct or common scheme or plan" as the offense of conviction. U.S.S.G. § 1B1.3(a)(2).[3]

banc) (Merritt, C.J., dissenting) (§ 1B1.3 exceeds statutory authority and is unconstitutional); *id.* at 1513 (Martin, J., dissenting) (§ 1B1.3 exceeds statutory authority and is unfair, especially with regard to controlled substance offenses); *id.* at 1514 (Jones, J., dissenting). Judge Newman of the Second Circuit has called the relevant conduct provision "perhaps the single most objectionable feature of the current guidelines." Jon O. Newman, *Five Guideline Improvements*, 5 Fed. Sentencing Rep. 190 (Jan./Feb. 1993). And Professor Michael Tonry has reported that "due to the inherent unfairness of the relevant conduct standard, no state considering sentencing guidelines has adopted it as a basis for sentencing, implementing instead a charge offense standard." *See* Donald P. Lay, "Rethinking the Guidelines: A Call for Cooperation," 101 *Yale L.J.* 1755, 1764 (June 1992). The guideline has nevertheless been upheld, not only in the Sixth and Eighth Circuits, but in the Fifth and Seventh Circuits as well. *See United States v. Thomas*, 932 F.2d 1085 (5th Cir.1991); *United States v. Ebbole*, 917 F.2d 1495 (7th Cir.1990).

**2.** In many of the statute's more specific provisions, Congress continued its focus on convic-

tions, using convictions as the trigger for sentence enhancements for career offenders, *see* 28 U.S.C. § 994(h), former felons, *see* § 994(i)(1), those who commit offenses while awaiting trial for a different offense, *see* § 994(4), and those who commit crimes of violence. *See* § 994(j). Elsewhere the statute uses the term "the offense," which clearly refers to the offense of conviction. *See* § 994(b)(1), (c) & (d)(9).

**3.** The guidelines use the term "relevant conduct" somewhat more broadly. Section 1B1.3(a)(1) also includes as relevant conduct charged and uncharged conduct "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Section 1B1.3(a)(2), on the other hand, deals with wholly separate instances of crime, so long as they are judged part of the same course of conduct, and so long as the underlying crimes are what the guidelines have classified as "groupable offenses." Because Section 1B1.3(a)(2) is the component of relevant conduct at issue in Wong's case, I use the term as that subsection does, to refer to separate instances of uncharged conduct.

This seemingly simple provision has a profound influence on criminal sentencing. Peter Chui Lin Wong pled guilty to two of 23 counts of bank fraud. Because he had no criminal record, a guilty plea on only the two counts would produce a sentencing range of 12 to 18 months. Yet Wong received a sentence of 30 months—the same sentence he would have received had he pled guilty to all 23 counts. As charged in the indictment, Wong used fraudulent bills of lading and false statements on credit applications to defraud at least four different institutions. Each of his alleged crimes employed one of six different fraudulent schemes, operated through an international trading company Wong owned. After Wong pled guilty to two counts, the sentencing judge decided that the other 21 counts had been part of a common scheme, so that guideline 1B1.3(a)(2) required Wong's sentence to be calculated as if he had pled to all 23 counts.

Thus, relevant conduct roughly doubled Wong's sentence. In more egregious cases, relevant conduct can multiply a sentence by as much as a factor of ten. In *United States v. McCrory*, 930 F.2d 63, 66 (D.C.Cir.1991), for example, relevant conduct increased the defendant's sentencing range from 2–3 years to 20–25 years. *See also United States v. Hahn*, 960 F.2d 903, 909 (9th Cir.1992); *United States v. Galloway*, 943 F.2d 897, 904 (8th Cir.1991) (collecting cases), *overruled on other grounds by United States v. Galloway*, 976 F.2d 414 (1992) (en banc). In theory, the influence of relevant conduct can be even greater. It adds up to 18 points to the base offense level for fraud or tax evasion, §§ 2F1.1 & 2T1.1, up to 20 points for theft, § 2B1.1, and up to 36 points for drug offenses, § 2D1.1. To dramatize these numbers, a 36–point increase in the base offense

level can be the difference between a term of probation and a mandatory life sentence.[4]

The relevant conduct provision not only accords great weight to unconvicted conduct, it treats unconvicted conduct no differently than if convictions had been obtained. For example, Wong received a 30–month sentence for two counts of a 23–count indictment. Had he pled to or been convicted of all 23 counts, his sentence would not have been one day longer. Had he been convicted on all 23 counts, only to see most of these convictions overturned on appeal as a result of trial error, his sentence would again be 30 months because of the relevant conduct provision. This perverse result is the automatic effect of Section 1B1.3(a)(2), which requires judges to sentence defendants as if they had been convicted of additional crimes even when they have not been.

The relevant conduct provision offers prosecutors an all but irresistible shortcut. The defendant need not be indicted or convicted for the other "crimes" for which he is punished at sentencing. *United States v. Fine*, 975 F.2d 596, 597, 600 (9th Cir.1992). In most circuits, a defendant may be sentenced for relevant conduct of which the jury *acquitted* him. *See United States v. Brady*, 928 F.2d 844, 850–51 (9th Cir.1991) (collecting cases but holding to the contrary). A defendant may even be sentenced under the guideline for conduct of which *he never could be convicted.* For example, relevant conduct is counted at sentencing even though a conviction for that conduct would be barred by the exclusionary rule. *See McCrory*, 930 F.2d at 68 (evidence seized in violation of Fourth Amendment may be considered at sentencing); *accord id.* at 72 (Silberman, J., concurring) ("[W]e are taking a big bite out of the exclusionary rule.").[5] And a prosecutor may

**4.** Statutory maximum sentences may curtail the effect of some enhancements for relevant conduct, but their limiting effect is increasingly small, particularly in drug cases. For example, 15 years ago the maximum penalty for possession with the intent to distribute cocaine, no matter the quantity, was 15 years in prison, and the prisoner was eligible for parole after serving just five years. 21 U.S.C. § 841(b)(1)(A) (1982 ed.). Today, a person with no criminal record who is convicted of possession with intent to distribute 5 kilograms of cocaine (or 50 grams of crack) faces a maximum term of life without

parole. 21 U.S.C. § 841(b)(1)(A). (West Supp. 1993). *See United States v. Jewel*, 947 F.2d 224, 240 (7th Cir.1991) (Easterbrook, J., concurring) (discussing increasing statutory maximums for drug offenses).

**5.** The majority of circuits have agreed that illegally seized evidence may be admissible at sentencing. *See United States v. Tejeda*, 956 F.2d 1256, 1261–62 (2d Cir.1992); *United States v. Lynch*, 934 F.2d 1226, 1236–37 (11th Cir.1991); *United States v. Torres*, 926 F.2d 321, 325 (3rd

circumvent the rigorous procedural rules of criminal trials by reserving some of her evidence to prove relevant conduct at the sentencing hearing where hearsay is freely admissible and the standard of proof a mere preponderance of the evidence. *United States v. Nichols,* 979 F.2d 402, 411 (6th Cir.1992); *United States v. Jewel,* 947 F.2d 224, 239 (7th Cir.1991) (Easterbrook, J., concurring) ("Today prosecutors often present at trial only a small fraction of the defendant's provable conduct. The rest is reserved for sentencing."). The resulting punishment is likely to be the same whether the defendant is found guilty beyond a reasonable doubt at trial or by a preponderance of the evidence at sentencing. In all of these examples, the relevant conduct provision does not grant sentencing judges discretion whether to punish defendants for unconvicted conduct; punishment is mandatory. U.S.S.G. § 1B1.3(a)(2).

### III

It is axiomatic that the guidelines must conform with the Sentencing Reform Act. *United States v. Quesada,* 972 F.2d 281, 282 (9th Cir.1992); 28 U.S.C. § 994(a) & (f). If an analysis of the language, structure, and legislative history of the Act proves that the relevant conduct guideline is inconsistent with the statute, the guideline is invalid. *NLRB v. Food & Commercial Workers,* 484 U.S. 112, 123, 108 S.Ct. 413, 416, 98 L.Ed.2d

429 (1987); *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446–48, 107 S.Ct. 1207, 1221–22, 94 L.Ed.2d 434 (1987); *see also, Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) ("guidelines are the equivalent of legislative rules adopted by federal agencies").

There are a number of reasons why I join those judges who believe the relevant conduct provision's focus on unconvicted conduct is contrary to Congress' mandate that convicted, not unconvicted, conduct serve as the cornerstone of the Sentencing Guidelines. First, the provision subverts Congress' intent to focus on the offense of conviction and prior convictions as the chief determinants of a guidelines sentence. Second, the provision conflicts with the specific provision in the Sentencing Reform Act that deals with multiple offenses. Finally, the provision fails to serve Congress' central goal of promoting "certainty and fairness" in sentencing. *See* 28 U.S.C. § 991(b)(1)(B).

### A

Congress said on more than one occasion that its purpose in ending the regime of discretionary, individualized sentencing was to eliminate "unwarranted sentencing disparities among defendants with *similar records* who have been found guilty of *similar criminal conduct.*" 28 U.S.C. § 991(b)(1)(B) (emphasis added).[6] In this statement of purpose

Cir.1991). The Sixth Circuit has held that illegally seized evidence may not be considered in determining the applicable guideline range, but may be considered in determining where to sentence the defendant within the applicable range. *United States v. Nichols,* 979 F.2d 402, 411–12 (6th Cir.1992). The distinction drawn by the Sixth Circuit makes sense because the sentencing judge exercises no discretion in determining the applicable guidelines range, but has broad discretion to fix the sentence within that range. *See* discussion of *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), *infra* pp. 937–38.

**6.** The quoted language is the statute's single most precise statement of congressional intent. It is repeated with slight variation at 18 U.S.C. § 3553(a)(6), and in the Senate Judiciary Committee's report. *See* S.Rep. No. 225, 98th Cong., 2d Sess. at 161 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News at pp. 3182,

3344. The Judiciary Committee's report also explains the need for sentence reform by pointing to the gross disparities in sentencing between offenders "convicted of the very same crime and possessing a comparable criminal history." *Id.* at 138, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3221.

The word "unwarranted" is tacit acknowledgment that factors other than criminal convictions may play some role in sentencing, and indeed Congress directed the Commission to consider the effect on criminal culpability of such factors as the defendant's role in the offense, *see* 28 U.S.C. § 994(g), his mental and emotional condition, *see* § 994(d)(4), and his assistance in the investigation or prosecution of crime, *see* § 994(n). But the quoted language nevertheless isolates two central factors—offense of conviction and criminal history—factors which other portions of the Sentencing Reform Act elaborate upon. For example, Congress goes into detail in directing the Commission which factors it should

Congress focused on convictions—both the offense of conviction and the defendant's prior criminal history—as the benchmarks of guidelines sentencing. Nothing in the statute or its legislative history suggests that Congress intended that unconvicted conduct would have comparable importance in guidelines sentencing.

An important measure of the Sentencing Commission's fidelity to its charge is the degree to which its guidelines track Congress' scheme. By this measure, the relevant conduct guideline is a profound failure. In Wong's case, the combination of present and prior convictions produces approximately a 15–month sentence. Unconvicted relevant conduct, on its own, doubles that sentence. In more egregious cases, relevant conduct dwarfs the roles of the offense of conviction and criminal history in guidelines sentencing. *See, e.g., McCrory,* 930 F.2d at 66; *Hahn,* 960 F.2d at 909; *Galloway,* 943 F.2d at 904.

The problem is not so much that the Sentencing Commission has chosen to punish unconvicted conduct, but that the guideline in its current form punishes relevant conduct so severely that relevant conduct rivals the offense of conviction and criminal history in importance. It is the sheer magnitude of the penalty Section 1B1.3(a)(2) imposes for relevant conduct that creates the conflict between the guideline and the statute. By assigning such an important role to a sentencing factor that does not even appear in Congress' detailed directions to the Sentencing Commission, *see* 28 U.S.C. § 994, the Commission highlights the extent to which it has exceeded its rulemaking authority in promulgating the relevant conduct provision. In the statute, Congress chose convicted conduct, both present and past, as the two cornerstones of guidelines sentencing. With the

relevant conduct guideline, the Commission has chosen a third cornerstone. The Commission, apparently caught up in forging a political compromise, ignored that its task was and is to build faithfully on Congress' foundations, not to lay its own. "The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is the power to adopt regulations to carry into effect the will of Congress as expressed by the statute." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 213–14, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976) (citations and internal quotation marks omitted).

B

Not only does the relevant conduct provision conflict with Congress' mandate that the offense of conviction and prior convictions serve as the principal determinants of sentencing, it also conflicts with Congress' specific directive on how to punish "multiple offenses committed in the same course of conduct." *See* 28 U.S.C. § 994(*l*)(1). The Sentencing Reform Act states that heavier criminal penalties are appropriate for multiple convictions:

> The Commission shall insure that the guidelines ... reflect ... the appropriateness of imposing an incremental penalty for each offense [when] a defendant is *convicted* of ... multiple offenses committed in the same course of conduct....

28 U.S.C. § 994(*l*) (emphasis added). In contrast, the relevant conduct provision says that incremental penalties are appropriate *regardless of whether a defendant is convicted of multiple offenses* committed in the same course of conduct.[7] Commentary to

---

consider in weighing the gravity of the offense of conviction. *See* § 994(c). And in several different places it instructs the Commission how to take account of criminal history, *see* § 994(d)(10), prescribing heavy penalties for defendants with serious criminal records, *see* § 994(h)(2) & (i)(1), and light ones for certain first offenders, *see* § 994(j).

**7.** Actually, the relevant conduct provision has this effect for only a certain class of crimes, those the Commission has labeled "groupable offenses." *See* U.S.S.G. § 3D1.2(d). The Commis-

sion classifies bank fraud as a groupable offense, but bank robbery as non-groupable. *Id.* (differentiating U.S.S.G. §§ 2B3.1 (robbery) & 2F1.1 (fraud)). The distinction is one the Commission created from whole cloth; the statute does not so much as hint at a distinction between these classes of crimes, let alone authorize incremental penalties to accrue in the absence of multiple convictions for "groupable" offenses. Neither legislative history nor logic suggests a reason for treating a pattern of bank frauds more severely than a pattern of bank robberies. The distinction appears to be nothing more than a compromise

the guidelines repeats several times that guideline 1B1.3(a)(2) applies to defendants who are *not* convicted of multiple offenses. *See* U.S.S.G. § 1B1.3(a)(2) (Application Note 3). In light of Congress' specific statutory directive on how to punish offenses committed in the same course of conduct, the relevant conduct provision raises two major concerns.

First, as Chief Judge Merritt has argued so persuasively, the provision contravenes the ancient maxim of statutory construction that *inclusio unius est exclusio alterius*—"the expression of one is the exclusion of the other." *See United States v. Davern*, 970 F.2d 1490, 1508 (Merritt, C.J., dissenting). Had Congress intended multiple offenses committed in the same course of conduct to incur incremental penalties whether or not multiple convictions were obtained, it would have directed the Commission to mete out punishment whenever a defendant *committed* multiple offenses, instead of only when a defendant is *"convicted"* of them. 28 U.S.C. § 994(*l*)(1). Instead, Congress used "convicted" here, in keeping with its broad directive that convicted conduct serve as the cornerstone of the guidelines. The Sentencing Commission's contrary reading "neglects the plain meaning to be assigned to Congress' words." *Davern*, 970 F.2d at 1508 (Merritt, C.J., dissenting).

Second, the guideline conflicts with the statute's mandate that additional convictions produce additional punishment. Section 994(*l*) prescribes incremental punishment for multiple convictions. Yet under the relevant conduct guideline, a single conviction and multiple convictions produce identical punishment. The guideline vests a prosecutor with the discretion to focus on a single act within a series of related criminal acts at trial. She can marshal all of her resources and best evidence to obtain a solitary conviction. Having achieved that goal, she can then exploit the lower preponderance-of-the-evidence standard by using her weaker evidence to prove relevant conduct and obtain a sentence that punishes the defendant for the entire series of criminal acts.

In sum, the magnitude of the punishment Section 1B1.3(a)(2) metes out for unconvicted conduct once again conflicts with the statute. Here, the problem is that the punishment for unconvicted offenses is exactly the same as the punishment for additional convictions, rendering meaningless Congress' directive that additional convictions produce incremental penalties.

C

Congress' primary goal in enacting the Sentencing Reform Act was to "provide certainty and fairness" in sentencing by channeling the sentencing discretion of district judges into prescribed guideline ranges. 28 U.S.C. § 991(b)(1)(B). In making the offense of conviction and prior convictions the major determinants of a guidelines sentence, Congress was faithful to its goal of promoting both certainty and fairness. To the extent sentences are based upon convictions, the results will be predictable and comparatively fair. When a person is convicted of a crime, we can have a high level of confidence that he in fact committed the crime. What gives us that confidence, of course, are the various procedural safeguards built into our criminal justice system to reduce the risk of convicting a person for a crime he did not commit.

When a person is punished, not on the strength of convictions, but on the strength of findings of fact made at sentencing hearings, we cannot possibly have the same level of confidence in the outcome. Under the relevant conduct provision, a defendant is punished, and punished severely, based upon a sentencing judge's finding that he is guilty of other crimes in the same course of conduct as the offense of conviction. The evidence need not persuade the sentencing judge of guilt beyond a reasonable doubt, but by a mere preponderance of the evidence—the more-probable-than-not standard used in civ-

of political or ideological differences on the Commission. *See* Stephen Breyer, "The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest," 17 *Hofstra L.Rev.* 1, 8–12 (1988). But the Commission is a judicial, not a legislative body. *See Mistretta v. United States*, 488 U.S. 361, 385, 109 S.Ct. 647, 661, 102 L.Ed.2d 714 (1989). Its job was and is to execute the will of the Congress, not to negotiate "compromises" of its own.

il cases. *United States v. Restrepo*, 946 F.2d 654, 657 (9th Cir.1991) (en banc). Moreover, the evidence used at sentencing hearings need not measure up to the strict standards of reliability we insist upon for evidence admitted at a criminal trial. The Sixth Amendment right of confrontation of witnesses is not honored, *United States v. Petty*, 982 F.2d 1365, 1370 (9th Cir.1993); *United States v. Silverman*, 976 F.2d 1502, 1511 (9th Cir. 1992) (en banc). The evidence may be hearsay, "even 'second-hand' hearsay, from informants and unidentified sources." *Silverman*, 976 F.2d at 1513. And, of course, there is no right to have a jury of your peers decide your fate. In sum, the relevant conduct guideline subverts Congress' grand plan to make federal sentencing certain and fair because it allows "convictions" obtained at informal sentencing hearings to substitute for real convictions.

I find it hard to believe that Congress ever imagined it was giving birth to such a system when it enacted the Sentencing Reform Act. Indeed, Congress' failure to concern itself with sentencing hearing procedures [8] demonstrates that Congress never contemplated a guideline that makes relevant conduct a sentencing determinant rivaling in importance the offense of conviction and prior convictions.[9] Surely, if Congress had imagined

that defendants would be punished severely for "convictions" obtained at sentencing hearings, we would have expected at least some members to raise questions whether procedures at sentencing hearings were adequate to guard against the risk of punishing defendants for crimes they did not commit. The courts spotted the problem immediately when confronted with the relevant conduct provision, and the judicial controversy over procedural safeguards at sentencing hearings has raged ever since.[10] There is every reason to believe some members of Congress would have spotted the problem just as quickly if anything like the relevant conduct guideline had occurred to them. Surely some members of Congress would have at least attempted more than minor tinkering with hearing procedures if they had thought that unconvicted conduct "proven" at sentencing hearings would join convicted conduct as a major determinant of guidelines sentencing. Congress' silence on the issue, especially in light of its avowed goal of achieving "fairness and certainty" in sentencing, can only be interpreted as a sign that the rulemaking authority Congress delegated to the Commission was never intended to permit a guideline as far-reaching in its sentencing consequences as the relevant conduct provision.[11]

**8.** Congress merely amended Federal Rule of Criminal Procedure 32 in small ways, for example, by adding a requirement that the court advise defendants of their right to appeal a sentence and by altering in minor ways the content required of a presentence report. *See* Fed. R.Crim.P. 32 (West 1993 Historical Notes).

**9.** Because Congress made convicted conduct, not unconvicted conduct, the hallmark of guidelines sentencing, it had no need to prescribe, or direct the Commission to prescribe, procedures for sentencing hearings. Certainty and procedural fairness are built into Congress' scheme because it is grounded largely on the presence or absence of criminal convictions, which are themselves the product of the most rigorous procedures available in our justice system.

**10.** *See, e.g., United States v. Petty*, 982 F.2d 1365, 1370–74 (9th Cir.1993) (Noonan, J., dissenting) (Confrontation Clause); *United States v. Silverman*, 976 F.2d 1502, 1525–26 (6th Cir.1992) (en banc) (Merritt, C.J., dissenting) (Confrontation Clause); *United States v. Restrepo*, 946 F.2d at 665, 669–76 (en banc) (Norris, J., dissenting) (standard of proof); *United States v. Brady*, 928

F.2d 844, 850–51 (9th Cir.1991) (acquitted conduct); Susan N. Herman, "The Tail That Wagged the Dog: Bifurcated Fact–Finding Under the Federal Sentencing Guidelines and the Limits of Due Process," 66 *S.Cal.L.Rev.* 289, 318 (1992); and cases cited in footnote 1, *supra; see also United States v. Wise*, 976 F.2d 393, 408–12 (8th Cir.1992) (en banc) (Arnold, C.J., dissenting in relevant part) (discussing due process and Confrontation Clause concerns raised by the sentencing procedures under the guidelines).

**11.** I emphasize that my reading of the statute does not eliminate the Sentencing Commission's substantial discretion; it merely recognizes appropriate limits. Courts, whose province it is to construe statutes, are sometimes forced to narrow an agency's authority by striking down a rule that over-reaches. Whether a substitute rule should then be promulgated or the form such a rule should take remains, in the first instance, a decision committed to the agency's sound discretion. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 448, 107 S.Ct. 1207, 1221–22, 94 L.Ed.2d 434 (1987). My point is only that this particular relevant conduct provision, principally because

## IV

I now turn to the majority's rationale for upholding the relevant conduct provision. The core of the majority's analysis seems to be a simple syllogism:

(1) In pre-guidelines sentencing, judges had "broad latitude" to consider unconvicted conduct;

(2) Congress did not say in the Sentencing Reform Act that judges would no longer have that discretion;

(3) Ergo, Congress intended the Commission's rulemaking discretion to be commensurate with the broad discretion sentencing judges enjoyed pre-guidelines.

Opinion at 929.

The logic of this syllogism escapes me. Before the guidelines, district judges did have broad latitude to consider evidence of unconvicted conduct at the time of sentencing, without regard to the rules of evidence. Indeed, they were free to consider every available scrap of information about the offender, however unreliable the source. *See Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (sentencing judge may consider evidence of unconvicted conduct, even hearsay evidence that would have been inadmissible at trial). But the majority's reliance upon this historical practice ignores the radical difference between pre- and post-guidelines sentencing. Judges had "broad latitude" pre-guidelines precisely because their mission was to sentence the offender, not just the offense, to rehabilitate, not just to punish. As the Court said in *Williams:*

Retribution is no longer the dominant objective of the criminal law. Reformation and rehabilitation of offenders have become important goals of criminal jurisprudence.

Modern changes in the treatment of offenders make it more necessary now than a century ago for observance of the distinctions in the evidential procedure in the trial and sentencing processes. For indeterminate sentences and probation have resulted in an increase in the discretionary powers exercised in fixing punishments.... [A] strong motivating force for the changes has been the belief that by careful study of the lives and personalities of convicted offenders many could be less severely punished and restored sooner to complete freedom and useful citizenship.

*Williams,* 337 U.S. at 248–49, 69 S.Ct. at 1084. Under this sentencing philosophy, there was virtually no limit on the information the sentencing judge could consider. The weight to be given information about the offender, whether about his childhood or about other crimes he may have committed, was a matter left to the sound judgment of the district judge in exercising his broad sentencing discretion. As the Court explained in *Williams:*

Under the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders. Their reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on guesswork and inadequate information. To deprive the sentencing judges of this type of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation. We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination.

*Williams,* 337 U.S. at 249–50, 69 S.Ct. at 1084.

But what does all that pre-guidelines history have to do with the validity of the relevant conduct provision? The Sentencing Reform Act "revolutionized the manner in which district courts sentence persons convicted of federal crimes." *Burns v. United States,* ——

---

of the magnitude of the punishment it metes out, exceeds the rulemaking authority delegated to the Commission by the Sentencing Reform Act.

U.S. ——, ——, 111 S.Ct. 2182, 2184, 115 L.Ed.2d 123 (1991). Congress was determined to reduce the disparities in sentencing that were a product of discretionary, individualized sentencing. It dealt with the problem by marginalizing rehabilitation as a sentencing goal and ending parole as a sentencing practice, and most importantly of all, by severely restricting the sentencing discretion of district judges. *See* 28 U.S.C. § 994(b)(2) & (k); S.Rep. No. 225, 98th Cong., 2d Sess. at 38, 56, *reprinted in* 1984 U.S.Code Cong. & Admin.News at pp. 3182, 3221, 3239. In doing so, Congress destroyed the core of *Williams'* rationale for giving judges "broad latitude" to consider unconvicted conduct in pre-guidelines sentencing.

Nonetheless, and without explanation, the majority leaps from the historic fact that in pre-guidelines sentencing, *judges* had discretion to consider unconvicted conduct, to the conclusion that the *Commission* has the authority to prescribe a major role for unconvicted conduct in guidelines sentencing. I simply fail to grasp the logical connection between judicial sentencing discretion in the pre-guidelines era and the Commission's rulemaking authority under the very statute that brought the era of discretionary sentencing to a close in the federal courts.

But even if I could overlook the majority's lapse of logic in making the leap from the breadth of judicial discretion before the guidelines era to the breadth of the Commission's rulemaking authority, I would still be puzzled. The majority makes a second leap,

equally baffling, when it finds authority for the relevant conduct provision in Congress' silence on the issue of punishment for unconvicted relevant conduct. In relying on the absence of express language limiting the Commission's discretion to punish unconvicted conduct, *see* opinion at 929, the majority ignores the teaching of the Supreme Court that legislative silence does not in itself constitute a delegation of authority: "An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent." *Burns,* —— U.S. at ——, 111 S.Ct. at 2186. Nor does the fact that Congress granted some discretion to the Sentencing Commission relieve us of our obligation to decide the outer limits of that discretion. When we are called upon to decide whether a particular guideline goes beyond the limits of the Commission's rulemaking authority, as we are in this case, we must employ the traditional tools of statutory construction, considering the text of the statute, its structure, and its legislative history. *See NLRB v. Food & Commercial Workers,* 484 U.S. 112, 123, 108 S.Ct. 413, 416, 98 L.Ed.2d 429 (1987). With the exception of a curious reference to statutory language authorizing *judicial* departures from the guidelines,[12] the majority employs none of these tools, satisfying itself that congressional silence must mean congressional authorization.

Two recent decisions by other circuits make the point that statutory silence alone does not constitute a delegation of authority.[13] In each, the court found that the Com-

---

12. The majority relies upon Congress' intent that the guidelines "maintain[] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices." Opinion at 929 n. 1 (quoting 28 U.S.C. § 991(b)(1)(B)). What connection the majority sees between this fragment of the statute and the Commission's authority to adopt the relevant conduct guideline is unclear. As I read it, this passage in § 991(b)(1)(B) was designed to ensure that the Commission leave district judges *some* discretion to depart from the "general sentencing practices" established by the Commission, which, of course, means the guidelines. In other words, the passage assures that judges retain some measure of "flexibility"; it does not give the Commission "flexibility" to depart from the statutory scheme.

13. A recent Supreme Court case also illustrates the principle in the specific context of relevant conduct, albeit not in a case involving the Sentencing Guidelines. In *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), a criminal defendant challenged the statutory authority for a sentence of restitution, where the penalty assessed against him reflected restitution not only for the offense of conviction, but also for several acts of unconvicted conduct. *Id.* at 414, 110 S.Ct. at 1980. The Court held that the Victim and Witness Protection Act allowed restitution for the offense of conviction, but that open-ended language in the statute— language allowing the court to consider "such other factors as the court deems appropriate"— provided no authority for an award of restitution reflecting the harm caused by unconvicted conduct. *Id.* at 416–18, 110 S.Ct. at 1982–83.

mission had exceeded its authority in promulgating a guideline concerning an issue on which the Sentencing Reform Act is silent. In *United States v. Price*, 990 F.2d 1367 (D.C.Cir.1993), the D.C. Circuit struck down a guideline requiring an enhanced sentence for "career offenders" convicted of conspiracy to commit a controlled substance offense. *Id.* at 1369. While language in the Act expressly authorizes the adoption of a career offender guideline with regard to substantive offenses "described in" specific statutes, the court held that the Commission exceeded its mandate when it extended the enhancements to conspiracies to commit these offenses. *Id.* The Act is silent on the appropriateness of enhanced penalties for those convicted of drug conspiracies. Reasoning that a "conspiracy to commit a crime involves quite different elements from whatever substantive crime the defendants conspire to commit," the court ruled that a conspiracy to violate the substantive crimes enumerated in the statute "cannot be said to be one of the offenses 'described in'" the statute. *Id.* In *United States v. Spiropoulos*, 976 F.2d 155, 164–68 (3d Cir.1992), the Third Circuit employed similar logic in striking down a guideline requiring defendants to pay a fine to cover the costs of their own imprisonment. The court found no specific language in the Act authorizing fines for the purpose of restitution. In light of this silence, the court employed the traditional tools of statutory construction and concluded, after considering the statute's purpose, text, and structure, that Congress did not intend to authorize such a guideline. *Id.* at 165–66.

In the instant case, the majority fails to employ these same tools to determine, in the face of statutory silence, whether Congress intended to authorize punishment of unconvicted conduct. In particular, the majority neglects the "full hierarchy of punishment" Congress legislated in the Sentencing Reform Act. *See Mistretta v. United States*, 488 U.S. 361, 377, 109 S.Ct. 647, 657, 102 L.Ed.2d 714 (1989). I have explained why I believe an analysis of the Act demonstrates that Congress intended to limit the Commission's rulemaking authority. When Congress "stipulated the most important offense and offender characteristics to place defendants within" its hierarchy of punishment, *id.*, relevant conduct was not among them. When Congress instructed the Commission on how to treat defendants *convicted* of multiple offenses committed in the same course of conduct, it made no provision for defendants who had not been convicted of such offenses. And when Congress decreed that the guidelines should promote "certainty and fairness" in sentencing, it chose a goal that is ill-served by the relevant conduct provision, which shapes sentences on the basis of findings of guilt made under the loose procedures of sentencing hearings. Having decided that statutory silence means congressional authorization, the majority refuses to conduct a serious investigation of congressional intent. In so doing, it ignores these indicators of congressional intent, all of which support the case against the relevant conduct provision.

To be sure, Congress did not pretend that in delegating to the Commission the task of promulgating sentencing rules, it expected the task to be purely ministerial. For example, it directed the Commission to consider a list of offense and offender characteristics "among others" in establishing categories of offenses and offenders. *See* 28 U.S.C. § 994(c) & (d). Presumably the Commission may, at its own discretion, add other factors to this list. Moreover, some of the factors on Congress' list are themselves invitations to the Commission to exercise discretion. Assessing "the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense" requires the Commission to make judgment calls in designing the guidelines. *See* 28 U.S.C. § 994(c)(2).

But the Commission's discretion is not boundless. Congress took the trouble to legislate four pages' worth of detailed instructions to the Commission. *See* 28 U.S.C. § 994. We are obliged to consider such specific instructions when called upon to define the limits of the Commission's statutory authority. *See Kosak v. United States*, 465 U.S. 848, 853 n. 7, 104 S.Ct. 1519, 1523 n. 7, 79 L.Ed.2d 860 (1984). Indeed, the Supreme Court's rationale in upholding the constitutionality of the Sentencing Reform Act requires us to recognize limits to the Commis-

sion's discretion. The Court reasoned that, in delegating authority to the Commission, Congress had supplied an "intelligible principle" against which the Commission's performance could be measured. *Mistretta,* 488 U.S. at 379, 109 S.Ct. at 658 (citing *Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944)). The "intelligible principle" is derived from the "overarching constraints" and "detailed guidance," *id.* at 376, 64 S.Ct. at 657 providing " 'criteria . . . wholly adequate for carrying out the general policy and purpose' of the Act." *Id.* at 379, 64 S.Ct. at 658 (quoting *Sunshine Coal Co. v. Adkins,* 310 U.S. 381, 398, 60 S.Ct. 907, 84 L.Ed. 1263 (1940)). If the Commission has virtually unfettered discretion to graft its own criteria onto Congress' scheme, even to the extent of adding sentencing factors that rival or overwhelm the primary factors Congress chose, then the viability of that "intelligible principle" is called into question. And if the statute provided no "intelligible principle" to guide courts in judging whether the Commission has exceeded its rulemaking authority, then the statute itself would not have survived constitutional scrutiny in *Mistretta.*

In relying so heavily on congressional silence without analyzing the statute as a whole, the majority's analysis admits to no "intelligible principle" for defining the limits of the Commission's rulemaking authority. The essence of the majority's reasoning is that if Congress did not expressly prohibit the Commission from making unconvicted relevant conduct the cornerstone of the guidelines, then Congress must have intended the Commission to have the authority to do so. When we read the statute in its entirety, however, we see that it is not written as a series of prohibitions. Its directions are stated in the affirmative: the Commission shall "promulgate," § 994(a), "establish," § 994(b), "consider," §§ 994(c) & (d), "assure," §§ 994(d), (e), (h) & (i), "insure," §§ 994(j), (k), (*l*), (m), "promote," § 994(f), and "take into account," § 994(g) certain

things. Thus, in the absence of express prohibitions on Commission authority, the majority's approach that what is not expressly prohibited by the statute is permitted offers no "intelligible principle" for deciding whether the Commission has exceeded the limits of its rulemaking authority.[14]

## V

Because I would strike down the relevant conduct provision as exceeding the statutory limits of the Commission's rulemaking authority, I have no need to resolve appellant's constitutional challenge to the guideline. I disagree, however, with the majority's assertion that "appellant's constitutional challenge to the relevant conduct provisions is precluded by our decision in *United States v. Restrepo,* 946 F.2d 654 (9th Cir.1991) (en banc)." Opinion at 930. In *Restrepo* we did not decide the constitutionality of the relevant conduct guideline. Rather, we decided only that the preponderance-of-the-evidence standard of proof satisfies due process requirements at sentencing hearings. *Id.* at 655. The majority is simply wrong in suggesting that stare decisis bars us from considering the constitutionality of the relevant conduct provision in this case.

*Chief Judge Merritt* of the *Sixth Circuit* has made a powerful case against the constitutionality of the relevant conduct provision. *See United States v. Silverman,* 976 F.2d 1502, 1525–26 (6th Cir.1992) (en banc) (Merritt, C.J., dissenting) ("The 'relevant conduct' provisions of the new sentencing code are so fundamentally inequitable and contrary to principles of evenhanded justice that they violate due process of law."). Chief Judge Merritt's opinion reinforces my view that we should invalidate the relevant conduct provision on statutory grounds because "where an otherwise acceptable construction of a statute would raise serious constitutional problems, [we should] construe the statute to avoid

---

**14.** The constraining influence of these affirmative instructions is necessarily indirect. For example, the Commission is indirectly prohibited from promulgating racially discriminatory guidelines because the Commission must "assure that the guidelines . . . are entirely neutral as to race. . . ." 28 U.S.C. § 994(d). Likewise, the Commission is indirectly prohibited from punishing unconvicted conduct as if it were convicted conduct because the Commission must "insure that the guidelines . . . impos[e] an incremental penalty for each offense [when] a defendant is *convicted* of . . . multiple offenses. . . ." 28 U.S.C. § 994(*l*) (emphasis added).

such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988). Defenders of the relevant conduct guideline [15] argue that any constitutional problems it may have presented are put to rest by *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). In *Williams,* the Court held that a sentencing judge did not offend due process when he considered hearsay evidence that a convicted murderer had committed a string of burglaries for which he was never convicted. The applicability of *Williams* to guidelines sentencing is highly suspect, however, now that Congress has closed the books on discretionary, individualized sentencing. *See supra* p. 937. To repeat, the Sentencing Reform Act "revolutionized" federal sentencing, abandoning discretionary sentencing in favor of "the mechanical dictates of the Guidelines." *Burns v. United States,* — U.S. —, —, 111 S.Ct. 2182, 2184, 115 L.Ed.2d 123 (1991). The wide discretion previously afforded judges has been constricted until in most cases the only choices remaining are within narrow guideline ranges. As I stated in *Restrepo:*

> Under the Guidelines, judicial discretion is all but eliminated. The Guidelines *require* a sentence determined by the offense level corresponding to the offense of conviction. The sentence changes if, and only if, the sentencing judge makes specified findings of fact. Judicial fact-finding is substituted for judicial discretion as the currency of the new sentencing regime.

*Restrepo,* 946 F.2d at 665 (Norris, J., dissenting) (emphasis added). The result of this radical change is to tear *Williams* from its roots, requiring courts to take a fresh look at the constitutional problems raised by a system that mandates punishment for "convictions" obtained at sentencing hearings on the basis of a mere preponderance of evidence that is admitted in disregard of the Confrontation Clause.

But, even if we accept some continuing viability for *Williams* in an era of guidelines sentencing, *Williams* did not give judges carte blanche in sentencing. Even in the context of discretionary, pre-guidelines sentencing, the Supreme Court recognized limits on the role unconvicted conduct can play. In *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), the Court said that while the sentencing judge had latitude to consider a wide range of information at sentencing, unconvicted conduct could not be used to enhance a criminal sentence "for the purpose of saving the Government the burden of bringing a separate ... prosecution." *Id.* at 53, 98 S.Ct. at 2617. Yet because the relevant conduct provision punishes defendants for unconvicted conduct exactly as if it had been convicted conduct, the guideline promotes and facilitates precisely this "impermissible sentencing practice." *Id.* With Section 1B1.3(a)(2) in place, a savvy prosecutor will take to the jury just one or two counts, saving his evidence of additional offenses for proving relevant conduct at sentencing. *See supra* p. 935. In other words, Section 1B1.3 "constitutes a 'dubious invitation' for prosecutors 'to indict for less serious offenses which are easy to prove and then expand them in the probation office.' " *United States v. Hahn,* 960 F.2d 903, 909 (9th Cir.1992) (quoting *United States v. Ebbole,* 917 F.2d 1495, 1501 (7th Cir.1990) and *United States v. Miller,* 910 F.2d 1321, 1332 (6th Cir.1990) (Merritt, C.J., dissenting)). Moreover, by depriving district judges of the discretion *not* to sentence for unconvicted conduct, the relevant conduct provision renders them helpless to police this prosecutorial practice. In sum, the relevant conduct provision makes routine a practice that *Grayson* described as "impermissible."

The Supreme Court again recognized a limitation on the role unconvicted conduct could play even in pre-guidelines sentencing when it acknowledged that the Constitution limits the power of legislatures to classify factors as mere "sentencing factors" when

---

**15.** *See, e.g., United States v. Galloway,* 976 F.2d 414, 423–25 (8th Cir.1992) (en banc); *United States v. Ebbole,* 917 F.2d 1495, 1496; *United States v. Silverman,* 976 F.2d 1502, 1508 (6th Cir.1992); William W. Wilkins, Jr. & John R. Steer, "Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines," 41 *S.Car. L.Rev.* 495, 502 n. 45 (1990).

they have a defining influence on punishment. While legislatures have great latitude in classifying particular conduct as an element of the offense or as a sentencing factor, conduct may not be classified as a sentencing factor if it exposes the defendant to "'a differential in sentencing ranging from a nominal fine to a mandatory life sentence.'" *McMillan v. Pennsylvania,* 477 U.S. 79, 87, 106 S.Ct. 2411, 2417, 91 L.Ed.2d 67 (1986) (quoting *Mullaney v. Wilbur,* 421 U.S. 684, 700, 95 S.Ct. 1881, 1890, 44 L.Ed.2d 508 (1975)). The relevant conduct provision can have precisely that effect, for it can increase a sentence from probation to life in prison, *see* § 2D1.1, and in practice it has increased sentences up to ten-fold. *See United States v. McCrory,* 930 F.2d 63, 66 (D.C.Cir.1991); *Hahn,* 960 F.2d at 909; *United States v. Galloway,* 943 F.2d 897, 904 (8th Cir.1991). And constitutional problems loom, the Court warns, if a sentencing factor becomes the "tail which wags the dog of the substantive offense." *McMillan,* 477 U.S. at 88, 106 S.Ct. at 2417.

To decide this case we can and should avoid the constitutional problems raised by the relevant conduct provision because a statutory ground is available to us that is not "plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp.,* 485 U.S. at 575, 108 S.Ct. at 1397. In sum, I come down firmly on the side of those judges who believe that the Sentencing Commission exceeded its rulemaking authority in promulgating Section 1B1.3(a)(2) of the Sentencing Guidelines.